1  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   Jonathan C. Sandler, Bar No. 227532
2  jsandler@bhfs.com
   2049 Century Park East, Suite 3550
3  Los Angeles, CA 90067
   Telephone: 310.500.4600
4  Facsimile: 310.500.4602

5  Attorneys for Defendant
   GREAT LAKES EDUCATIONAL LOAN
6  SERVICES, INC.

7

8                  UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11 KATHERINE SASS AND CODY              Case No. 3:20-cv-03424-EMC
   HOUNANIAN, on Behalf of Themselves
12 and All Others Similarly Situated,   **DEFENDANT GREAT LAKES
                                        EDUCATIONAL LOAN SERVICES, INC.'S
13            Plaintiffs,               NOTICE OF MOTION AND COMBINED
                                        MOTION TO DISMISS COMPLAINT
14    v.                                PURSUANT TO F.R.C.P. 12(b)(1) AND
                                        12(b)(6) AND MOTION TO STRIKE
15 GREAT LAKES EDUCATIONAL LOAN         CLASS ALLEGATIONS PURSUANT TO
   SERVICES, INC., EQUIFAX              F.R.C.P. 12(f); MEMORANDUM OF
16 INFORMATION SERVICES, LLC,           POINTS AND AUTHORITIES**
   TRANS UNION, LLC, EXPERIAN
17 INFORMATION SOLUTIONS, INC.          [*Filed concurrently with the Declaration of Jill
   AND VANTAGESCORE SOLUTIONS,          Leitl and [Proposed] Order*]
18 LLC,
                                        Date:     August 27, 2020
19            Defendants.               Time:     1:30 p.m.
                                        Ctrm:     5, 17th Floor
20                                      Judge:    Hon. Edward M. Chen

21

22 TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

23 CALIFORNIA, SAN FRANCISCO DIVISION AND TO PLAINTIFFS AND THEIR

24 ATTORNEY OF RECORD:

25        PLEASE TAKE NOTICE THAT on August 27, 2020 at 1:30 p.m., or as soon thereafter as

26 the matter may be heard before the Honorable Edward M. Chen, United States District Judge, in

27 Courtroom 5, of the United States District Court, Northern District of California, San Francisco

28 Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1   GREAT LAKES EDUCATIONAL LOAN SERVICES, INC. ("Defendant" or "Great Lakes") by

2   and through its undersigned counsel, will move to dismiss the claim asserted by Plaintiffs

3   KATHERINE SASS and CODY HOUNANIAN, on behalf of themselves and all others similarly

4   situated ("Plaintiffs"), or, in the alternative, to strike the class allegations.

5       Great Lakes' Motion is brought under Federal Rules of Civil Procedure Rule 12(b)(1) on

6   the grounds that Plaintiffs' claim is moot and that Plaintiffs lack standing to bring their claim for

7   prospective injunctive relief against Defendant; Rule 12(b)(6) on the grounds that Plaintiffs'

8   claim is preempted and Plaintiffs have failed to state a claim for which relief can be granted; and

9   Rule 12(f) on grounds that Plaintiffs' class allegations should be stricken because the face of the

10  Complaint demonstrates the class is not ascertainable and individual issues would predominate

11  the litigation. This Motion is based upon the accompanying Memorandum of Points and

12  Authorities, the Declaration of Jill Leitl ("Leitl Decl.") and attached exhibits, the documentation

13  on file, and such other argument of counsel as the Court may wish to consider.

14

15  Dated: July 17, 2020                           BROWNSTEIN HYATT FARBER

16                                                 SCHRECK, LLP

17

18                                                 By: /s/ Jonathan C. Sandler

19                                                     JONATHAN C. SANDLER
                                                       Attorneys for Defendant
20                                                     GREAT LAKES EDUCATIONAL LOAN
                                                       SERVICES, INC.

21

22

23

24

25

26

27

28

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................... 3

    A.    Procedural History ..................................................... 3

    B.    Factual Allegations.................................................... 3

III.  STANDARD OF REVIEW ................................................... 6

    A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction........... 6

    B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief ............. 7

    C.    Rule 12(f) Motion to Strike, Dismiss, or Deny Class Allegations......................... 7

IV.  ARGUMENT ........................................................................ 8

    A.    This Court Lacks Subject Matter Jurisdiction......................................... 8

        1.   Plaintiffs' claim is moot ..................................... 9

        2.   Plaintiffs lack standing................................... 10

            a.    Plaintiffs lack standing for future injunctive relief ..................... 11

            b.    Judgment against Great Lakes will not redress the alleged harm................................................ 12

    B.    Plaintiffs Fail to State a Claim for Relief ............................. 13

        1.   The CCRAA claim against Great Lakes is preempted by FCRA ............. 14

        2.   Plaintiffs fail to state a CCRAA § 1785.25(a) claim .............................. 17

            a.    The information Great Lakes reported was not inaccurate .......... 18

            b.    Great Lakes did not knowingly report inaccurate information ....................................... 20

    C.    The Class Allegations Must Be Stricken or Dismissed ..................... 20

        1.   The California Subclass is overly broad ................................. 21

        2.   Individual questions will necessarily predominate ................................. 24

        3.   Because Plaintiffs lack standing and their claim is moot, dismissal of the class action is appropriate ................................. 25

V.   CONCLUSION.................................................................... 25

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. Carrington Mortgage Servs., LLC*,
2013 WL 5718463 (N.D. Cal. Oct. 21, 2013)........................................................................ 22

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
465 F.3d 1123 (9th Cir. 2006)............................................................................................... 13

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ................................................................................................................... 9

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
938 F.3d 1147 (9th Cir. 2019)............................................................................................... 12

*Amirhamzeh v. Chase Bank USA, N.A.*,
No. CV-13-00527, 2013 WL 7219270 (C.D. Cal. Oct. 7, 2013)........................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 7

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 2009).................................................................................................... 7

*Banga v. Chevron U.S.A. Inc.*,
No. C-11-01498 JCS, 2013 WL 71772 (N.D. Cal. Jan. 7, 2013) ......................................... 22

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010).......................................................................................... 15, 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011)................................................................................... 7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................................. 11

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010)............................................................................................... 18

*Cunha v. IntelliCheck, LLC*,
254 F. Supp. 3d 1124 (N.D. Cal. 2017) ................................................................................ 11

*Diacakis v. Comcast Corp.*,
No. C 11-3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2013) ................................ 21, 24

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

*Dichter-Mad Family Partners, LLP v. U.S.*,
    707 F. Supp. 2d 1016 (C.D. Cal. 2010), *aff'd* 709 F.3d 749 (9th Cir. 2013) ........................... 7

*Douglass v. USAA Sav. Bank, Inc.*,
    No. CV 16-2601-R, 2016 WL 9185315 (C.D. Cal. July 18, 2016) ....................................... 20

*Duarte v. J.P. Morgan Chase Bank*,
    No. CV-131105, 2014 WL 12561052 (C.D. Cal. Apr. 7, 2014) ....................................... 22, 24

*El-Aheidab v. Citibank (S. Dakota), N.A.*,
    No. C-11-5359 EMC, 2012 WL 506473 (N.D. Cal. Feb. 15, 2012) ....................................... 15

*Faircloth v. AR Res., Inc.*,
    No. 19-CV-05830-JCS, 2020 WL 2747781 (N.D. Cal. May 27, 2020) ............................... 16

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir.1993) *overruled on other grounds*, 510 U.S. 517 (1994).................. 7

*In re Flash Memory Antitrust Litig.*,
    No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................... 23, 25

*Foster v. Carson*,
    347 F.3d 742 (9th Cir. 2003)............................................................................................. 9

*Friend v. Hertz Corp.*,
    No. C-07-5222 MMC, 2011 WL 750741 (N.D. Cal. Feb. 24, 2011), *aff'd,* 564
    F. App'x 309 (9th Cir. 2014) ......................................................................................... 25

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009).................................................................................*passim*

*Harrold v. Experian Info. Solutions, Inc.*,
    No. C 12–2987 WHA, 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012) ........................... 15, 18

*Heras v. Nelnet, Inc.*,
    No. CV166388, 2017 WL 4586334 (C.D. Cal. Apr. 28, 2017) ....................................... 18

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975)............................................................................................. 8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009)........................................................................................... 21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................................................ 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ....................................................................................... 25

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

iii

*Lovejoy v. Bank of Am., N.A.*,
No. C 13-1638 DMR, 2013 WL 3360898 (N.D. Cal. July 3, 2013) ...................................... 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 12

*Lyons v. Bank of Am., NA*,
No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ............................ 8, 21, 23

*Maldonado v. Ochsner Clinic Found.*,
493 F.3d 521 (5th Cir. 2007) ........................................................................................... 25

*Marseglia v. JP Morgan Chase Bank*,
No. 09CV2857 JAH(RBB), 2011 WL 13134334 (S.D. Cal. Aug. 3, 2011) ......................... 16

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) ...................................................................................... 11, 12

*Mazur v. eBay, Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ..................................................................................... 21

*Miller v. Bank of Am., Nat. Ass'n*,
858 F. Supp. 2d 1118 (S.D. Cal. 2012) .............................................................................. 15

*Morgan v. County of Yolo*,
277 Fed. Appx. 734 (9th Cir. 2008) ................................................................................. 25

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
236 F.3d 985 (9th Cir. 2000) ........................................................................................... 13

*Nissou-Rabban v. Capital One Bank (USA), N.A.*,
285 F. Supp. 3d 1136 (S.D. Cal. 2018) ............................................................................... 7

*Nissou-Rabban v. Capital One Bank (USA), N.A.*,
No. 15-CV-1673-JAH (RBB), 2016 WL 6804995 (S.D. Cal. Sept. 21, 2016) ..................... 15

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
No. EDCV19620JGBKKX, 2019 WL 6482221 (C.D. Cal. July 8, 2019) ............................ 11

*Oshana v. Coca–Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ........................................................................................... 21

*Otto v. Abbott Labs., Inc.*,
No. 512CV01411SVWDTB, 2015 WL 12776591 (C.D. Cal. Jan. 28, 2015) ................. 21, 22

*Oya v. Wells Fargo Bank, N.A.*,
No. 3:18-CV-01999-H-BGS, 2018 WL 5761486 (S.D. Cal. Nov. 2, 2018) ......................... 20

*Pablo v. ServiceMaster Global Holdings, Inc.*,
2009 WL 2524478 (N.D. Cal. Aug. 17, 2009) .................................................................. 24

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

iv

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

*Ramos v. Experian Info. Sols., Inc.*,
No. 16-CV-06375-PJH, 2017 WL 1047019 (N.D. Cal. Mar. 20, 2017)................................ 19

*Rara v. Experian Info. Sols., Inc.*,
No. 16-CV-06376-PJH, 2017 WL 1047020 (N.D. Cal. Mar. 20, 2017)................................ 22

*Robbins v. CitiMortgage, Inc.*,
No. 16-CV-04732, 2017 WL 6513662 (N.D. Cal. Dec. 20, 2017) ........................................ 18

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).......................................................................... 6, 7, 19

*Samuel v. CitiMortgage, Inc.*,
No. C 12-5871 MEJ, 2013 WL 1501491 (N.D. Cal. Apr. 10, 2013)................................ 15

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................ 8, 23, 24

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003)............................................................................. 7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .................................................................................... 11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)......................................................................... 7, 12

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)............................................................................. 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................................................................ 13

*Thompson v. Nationstar Mortg. LLC*,
No. 17-CV-02864-DMR, 2017 WL 3232549 (N.D. Cal. July 31, 2017) ............................ 20

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................ 8

*Trujillo v. First Am. Registry, Inc.*,
157 Cal. App. 4th 628 (2007)........................................................................... 22

*Vartanian v. AMFA Local #£9*,
285 F. App'x 395 (9th Cir. 2008) ....................................................................... 10

*Wang v. Asset Acceptance, LLC*,
681 F. Supp. 2d 1143 (N.D. Cal. 2010) ........................................................ 15, 16

**Statutes**

15 U.S.C. § 1681s-2 ............................................................................................. 14

15 U.S.C. § 1681s-2(a) .................................................................................... *passim*

15 U.S.C. § 1681t(b)(1)(F) ........................................................................... 14, 17

Cal. Civ. Code § 1785.25(a) ........................................................................ *passim*

Cal. Civ. Code § 1785.25(b) ........................................................................ 15, 17

Cal. Civ. Code § 1785.25(c) .................................................................... 15, 16, 17

Cal. Civ. Code § 1785.25(f) ..................................................................... 15, 16, 17

Cal. Civ. Code § 1785.31 .................................................................................. 15

Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No.
    116-136, __Stat.__(2020)..................................................................... *passim*

CARES Act § 3513 ........................................................................................... 19

CARES Act § 3513(a) ...................................................................................... 19

CARES Act § 3513(c) ...................................................................................... 19

CARES Act § 4022(c) ...................................................................................... 19

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................... 19

Fed. R. Civ. P. 8 ................................................................................................. 7

Fed. R. Civ. P. 12(b)(1) ................................................................... 1, 6, 12, 19

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 7, 14, 18

Fed. R. Civ. P. 12(f) ........................................................................... 1, 2, 7, 8

Fed. R. Civ. P. 23 ............................................................................................ 24

Fed. R. Civ. P. 23(b)(2) ....................................................... 21, 23, 24, 25

Fed. R. Civ. P. 23(b)(3) ............................................................. 21, 23, 24

Fed. R. Civ. P. 23(c)(1)(A) ............................................................................. 8

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................. 8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1

U.S. CONST. art. III ................................................................................................. 9, 10, 11, 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2
Great Lakes submits the following Memorandum of Points and Authorities in Support of

3
Defendant's Combined Motion to Dismiss (the "Motion") Complaint pursuant to Fed. R. Civ. P.

4
12(b)(1) and 12(b)(6) and Motion to Strike Class Allegations pursuant to Fed. R. Civ. P. 12(f).

5
**I.     INTRODUCTION**

6
Plaintiffs' putative class action against Great Lakes—a federally-contracted student loan

7
servicer—arises from the servicer's alleged inaccurate reporting of federal student loan

8
repayment statuses to credit reporting agencies ("CRAs") during a nine day period, amidst a

9
global pandemic, and pursuant to unclear guidance regarding an unprecedented emergency relief

10
law. On this basis, Plaintiffs bring a single claim for injunctive relief against Great Lakes under

11
the California Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq.* ("CCRAA").

12
However, the wrongdoing alleged against Great Lakes that Plaintiffs seek to enjoin (1) was not

13
wrong as a matter of law; and (2) was amended before the Complaint was filed.

14
Specifically, Plaintiffs allege Great Lakes' credit reporting of borrowers' loans as "D

15
(Deferred)" under the "Terms Frequency" reporting field was inaccurate in light of the recent

16
passage of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020)

17
(the "CARES Act"), which "suspends" borrowers' repayment obligations for federally-held

18
student loans until September 30, 2020. Great Lakes followed the limited guidance available at

19
the time and reported borrowers as "current," with borrowers' payment obligations as "$0," and

20
the payment "Terms Frequency" as "D (Deferred)". Great Lakes understood this reporting to be

21
accurate and that a report of "Deferred" under the "Terms Frequency" section of a consumer

22
report would have no negative impact on borrowers' credit scores. Indeed, three of the four major

23
credit scoring algorithms attributed no negative credit score repercussions from such reporting.

24
However, unbeknownst to Great Lakes, one of these credit scoring models—the Vantage

25
Score algorithm—treated a code of "Deferred" as a negative scoring event for some borrowers.

26
After learning of this issue for the first time on May 11, 2020, Great Lakes promptly investigated

27
the issue, changed the "Terms Frequency" reporting to "M (Monthly)" and sent updated files to

28
the CRAs on May 15, 2020—four days later. It is thus indisputable that the alleged inaccurate

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

1  reporting central to this dispute was resolved and retroactively applied within nine days and prior

2  to the filing of this lawsuit. Therefore, because there is nothing to enjoin and the alleged

3  inaccuracy has been updated, Plaintiffs' claim against Great Lakes is moot and Plaintiffs lack

4  standing to pursue prospective injunctive relief. Plaintiffs' sole cause of action against Great

5  Lakes thus fails and must be dismissed with prejudice for lack of subject matter jurisdiction.

6        To the extent the Court disagrees that the claim is moot or that Plaintiffs lack standing,

7  Plaintiffs' CCRAA claim fails nonetheless. Plaintiffs' claim is styled as a CCRAA § 1785.25(a)

8  claim against Great Lakes to avoid well-settled preemption principles. But, in actuality, Plaintiffs'

9  claim encompasses obligations on furnishers of credit information that are expressly preempted

10 by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Specifically, Plaintiffs do

11 not plead the elements of a § 1785.25(a) claim (which is not preempted by FCRA) but, rather,

12 generally complain that Great Lakes did not "fix" the alleged flawed reporting promptly enough

13 after receiving notice of the dispute. Such obligations of furnishers are expressly preempted by

14 FCRA, and thus, Plaintiffs fail to state a claim for relief under the CCRAA.

15       In addition to being preempted, Plaintiffs' CCRAA § 1785.25(a) claim fails for Plaintiffs'

16 inability to plausibly plead the claim's requisite elements. To sufficiently allege a § 1785.25(a)

17 claim, Plaintiffs must plead, *inter alia*, that Great Lakes *knowingly* reported *inaccurate*

18 information. Yet, based on the plain language of the CARES Act, a report of "Deferred" is not

19 inaccurate because the law "suspends" student loan payments. "Deferred" is synonymous with

20 "suspends." But, even if a report of "Deferred" could be construed to be inaccurate, Plaintiffs do

21 not allege—nor could they—that Great Lakes *knew* of the alleged inaccuracy when it made the

22 original reporting. Indeed, under these unprecedented circumstances and given the minimal

23 timeframe at issue, Great Lakes had no reason to know that a "Deferred" terms frequency report

24 could in any way be inaccurate, much less result in a slight reduction in some consumers' credit

25 scores due to a flawed algorithm. Thus, Plaintiffs fail to state a claim against Great Lakes under

26 CCRAA § 1785.25(a).

27       Finally, the Court should strike Plaintiffs' class allegations against Great Lakes under

28 Rule 12(f), as the face of the Complaint demonstrates the putative classes are overbroad and not

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

1   ascertainable and that individual issues would predominate the litigation. To bring a claim under

2   § 1785.25(a), a plaintiff must have incurred actual damages resulting from the alleged

3   wrongdoing—even if the plaintiff is seeking only injunctive relief. It is well-established that a

4   lowered credit score alone is insufficient to demonstrate actual damages. Consequently, each

5   individual class member would need to demonstrate he or she was actually harmed by the alleged

6   inaccurate reporting. Yet, the proposed class definitions necessarily include countless individuals

7   who, for example, did not attempt to seek credit, were not denied credit, or did not utilize the

8   Vantage Score credit scoring model and, thus, suffered no harm. Moreover, even narrowing the

9   putative classes would not cure their deficiencies, as identifying consumers who suffered actual

10  damages would cause individual issues to predominate the litigation. Accordingly, the class

11  allegations are fatally deficient and should be stricken at this stage without awaiting discovery.

12  **II.      BACKGROUND**

13         **A.      Procedural History**

14         Plaintiffs filed this Complaint on May 20, 2020. On June 5, 2020, Plaintiffs and

15  Defendants stipulated to an extension of time for all Defendants to respond to the Complaint up to

16  and including July 17, 2020. In response, Defendant Great Lakes files this Motion seeking to

17  dismiss the sole cause of action against it or, in the alternative, to strike the class allegations.

18         **B.      Factual Allegations**

19         The following facts and allegations demonstrate Plaintiffs' claim against Great Lakes

20  should be dismissed with prejudice:

21  1.      Great Lakes contracts with the U.S. Department of Education (the "Department") to

22  service student loans on the Department's behalf. In servicing these student loans, Great Lakes

23  furnishes repayment-related information to CRAs. (Compl., ¶¶ 13, 15).

24  2.      Defendants Equifax Information Services, LLC ("Equifax"), TransUnion, LLC

25  ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and VantageScore Solutions,

26  LLC ("Vantage") operate a shared proprietary consumer credit-scoring model—the "Vantage

27  Score" algorithm. (Compl., ¶¶ 1, 22, 51). The Vantage Score model and other credit scoring

28  models are algorithms that generate a numeric score based on data in a consumer's credit report,

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

and certain credit events can negatively or positively affect a consumer's credit score. (Compl., ¶ 59). Equifax, Experian, TransUnion, and Vantage control the Vantage Score algorithm; Great Lakes has no such authority or control. (Compl., ¶¶ 54–66, 94).

3.    As a furnisher of credit information, Great Lakes does not and cannot report "negative" credit score events. Rather, furnishers report loan statuses and special comments, which only a third-party creditor, monitoring service, or scoring company will themselves independently choose to consider "positive," "negative," or "neutral." (Leitl Decl., ¶ 15).

4.    On March 27, 2020, Congress enacted the CARES Act, which "suspends" student loan borrowers' payment obligations and interest accrual from March 13 to September 30, 2020—*i.e.*, a "pause button" (not a "stop" or "delete" button) on student loans. (Compl., ¶¶ 3, 25, 27).

5.    On May 6, 2020, Great Lakes reported borrowers in the CARES Act forbearance to the CRAs in a manner Great Lakes understood complied with the CARES Act and corresponding guidance. None of the available guidance included specific code-level details on how credit reporting files should be structured to comply the CARES Act. (Leitl Decl., ¶¶ 6–7).

6.    In its initial May 6th report, Great Lakes reported borrowers' account statuses as "Current"; borrowers' regularly scheduled payment amount and actual payment amount as "$0"; and the payment "Terms Frequency" as "D (Deferred)." (Leitl Decl., ¶ 8); (Compl., ¶42); (Decl. **Exhibits 1** & **2**, Plaintiffs' Hounanian and Sass 05/06/20 Credit Reports).

7.    At issue here with respect to Plaintiffs' single claim against Great Lakes is the accuracy of Great Lakes' report of "D (Deferred)" under the "Terms Frequency" section.  (Compl., ¶¶ 42–51).

8.    Great Lakes reported this way based on guidance available to it at the time—none of which specifically instructed furnishers how to report under the "Terms Frequency" field. (Leitl Decl., ¶ 10). Typically, furnishers have two options of reporting under "Terms Frequency"— either "M (Monthly)" or "D (Deferred)." *Id.* Great Lakes understood a report of "D (Deferred)" was accurate and compliant with the CARES Act, given that the CARES Act only "suspends" payment obligations, and borrowers were not required to make any monthly payments during this COVID-19 forbearance. *Id.* Great Lakes understood that, historically, a report of deferred under this section would not negatively impact a borrower's credit score. *Id.*

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

9.      However, after receiving questions on May 11, 2020 about apparent reductions in borrowers' credit scores, Great Lakes immediately investigated and identified what it believed to be an issue that could be affecting the scores. (Leitl Decl., ¶ 11).

10.     Great Lakes determined that one of the four major credit scoring algorithms—the Vantage Score algorithm published by Credit Karma—assigned a furnisher's deferral code a negative value in its scoring for some borrowers. (Leitl Decl., ¶ 13).

11.     On May 15, 2020, Great Lakes amended and back-dated its prior CARES Act reporting and sent updated reports to the CRAs for all borrowers with federally-held student loans serviced by Great Lakes—changing the "Terms Frequency" reporting from "D (Deferred)" to "M (Monthly)" (Leitl Decl., ¶¶ 16–18); (**Exhibits 3** & **4**, Plaintiffs' Hounanian and Sass 05/15/2020 Credit Reports).

12.     Thus, for a period of nine days—May 6, 2020 to May 15, 2020—Great Lakes reported the "Terms Frequency" section of student loans as "D (Deferred)" to CRAs. *Id.*; (Compl., ¶ 46).

13.     As a furnisher, Great Lakes has no ability to control what the CRAs do with its amended reports or when such amendments are reflected in the consumer's report. (Leitl Decl., ¶ 19).

14.     Also, Great Lakes is uninvolved with and has no authority or control over the Vantage Score algorithm and no ability to adjust the Vantage Score scoring model, including whether a given credit event is deemed a score-neutral or negative scoring event for a given borrower. (Compl. ¶¶ 54–63); (Leitl Decl., ¶ 20).

15.     Accordingly, before this Complaint was filed, Great Lakes did everything in its control to immediately update its reporting after learning the Vantage Score algorithm was flawed. (Leitl Decl., ¶ 21).

16.     Plaintiffs do not allege that Great Lakes "knew" its reporting was inaccurate. (*See generally*, Compl.). Rather, Plaintiffs allege that Mr. Hounanian and other borrowers "immediately" "noticed and sought relief" from this alleged inaccurate reporting, in part through Great Lakes' Twitter feed. (*Id.*, ¶¶83–84). In response to these "complaints," Plaintiffs concede that Great Lakes "fix[ed] the [alleged] problem [by] the end of the month [of May]." (*Id.*, ¶ 85).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

17.     Now that Great Lakes understands that, for at least some borrowers, the Vantage Score algorithm attributed a negative credit event with a report of "Deferred" under "Terms Frequency," Great Lakes will not alter its current reporting of "Monthly" unless directed by the Department or similar authority. (Leitl Decl., ¶ 22).

18.     To be sure, on June 10, 2020, Great Lakes submitted its "Corrective Action Plan" ("CAP Response") to the Department Federal Student Aid Office ("FSA"), in which Great Lakes outlined the reporting issues underlying this action. (Leitl Decl., ¶ 23); (**Exhibit 8**, CAP Response). In this CAP Response, Great Lakes explained it had no control over the Vantage Score algorithm, but committed to provide FSA all coding information for future credit reporting changes prior to implementation. (Leitl Decl., ¶ 24); (**Ex. 8**, p. 3) ("To ensure Great Lakes' credit reporting is aligned with FSA's expectations and requirements, Great Lakes will provide FSA all coding information for future credit reporting changes prior to implementation."). Thus, Great Lakes will not alter its CARES Act-related reporting in any manner, including its "Terms Frequency" report of "M (Monthly)" unless approved or directed by the FSA. (Leitl Decl., ¶ 25).

## III.     STANDARD OF REVIEW

### A.     Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* (citations omitted).

A Rule 12(b)(1) challenge to subject matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Where a defendant brings a factual jurisdictional challenge, the "district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* In a factual challenge, the "court need not presume the truthfulness of the plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1   the court, the party opposing the motion must furnish affidavits or other evidence necessary to

2   satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale*

3   *Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

4   **B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief**

5   A motion to dismiss under Rule 12(b)(6) is governed by Rule 8's pleading standards. *See*

6   *Dichter-Mad Family Partners, LLP v. U.S.,* 707 F. Supp. 2d 1016, 1025 (C.D. Cal. 2010), *aff'd*

7   709 F.3d 749 (9th Cir. 2013). Under Rule 8, "a complaint must contain sufficient factual matter,

8   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

9   662, 678 (2009) (quotations omitted). In determining whether a complaint states a plausible claim

10  for relief, the court must draw on its judicial experience and common sense. *Id.* at 679. The court

11  should not accept as true those allegations which state only legal conclusions. *Id*. at 678–79.

12  "Rule 8 . . . does not unlock the doors for a plaintiff armed with nothing more than conclusions."

13  *Starr v. Baca*, 652 F.3d 1202, 1219 (9th Cir. 2011). Furthermore, "a court [is not] required to

14  accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

15  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

16  Thus, dismissal is appropriate when the plaintiff has failed to assert "a cognizable legal theory or

17  [an] absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

18  *Police Dept*., 901 F.2d 696, 699 (9th Cir. 2009).

19  **C.    Rule 12(f) Motion to Strike, Dismiss, or Deny Class Allegations**

20  The Court has "broad discretion" under Rule 12(f) to strike from any pleading "any

21  redundant, immaterial, impertinent, or scandalous matter." F.R.C.P. 12(f); *Nissou-Rabban v.*

22  *Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1144 (S.D. Cal. 2018). "[T]he function of a

23  12(f) motion to strike is to avoid the expenditure of time and money that must arise from

24  litigating spurious issues by dispensing with those issues prior to trial[.]" *Fantasy, Inc. v. Fogerty*,

25  984 F.2d 1524, 1527 (9th Cir.1993) (citations omitted) *overruled on other grounds*, 510 U.S. 517

26  (1994). "A motion to strike is properly granted where plaintiff seeks a form of relief that is not

27  available as a matter of law." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220,

28  1244–45 (C.D. Cal. 2011).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

7

1    Under Rules 23(c)(1)(A), 23(d)(1)(D), and 12(f), the Court "has authority to strike class

2    allegations" and need not wait until discovery has been conducted and a motion for class

3    certification submitted before deciding whether a matter can be maintained as a class action

4    where, as here, "the complaint demonstrates that a class action cannot be maintained." *Tietsworth*

5    *v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *accord Lyons v. Bank of Am., NA*, No. C

6    11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011); *Sanders v. Apple Inc.*, 672 F.

7    Supp. 2d 978, 990 (N.D. Cal. 2009) (where the face of the complaint demonstrates that a class

8    action cannot be maintained on the alleged facts, "a defendant may move to strike class

9    allegations prior to discovery"); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

10   **IV.    ARGUMENT**

11       **A.    This Court Lacks Subject Matter Jurisdiction**

12   Great Lakes brings both a facial and factual Rule 12(b)(1) challenge. The face of the

13   Complaint demonstrates that Plaintiffs' sole claim against Great Lakes is moot and that Plaintiffs

14   lack standing. To the extent the Court has any doubt from the Complaint of these conclusions,

15   Great Lakes' indisputable evidence confirms the claim fails for lack of subject matter jurisdiction

16   and that no amendment of the pleading could fix these jurisdictional deficiencies.

17   Plaintiffs bring one claim against Great Lakes for an alleged violation of CCRAA §

18   1785.25(a). (Compl., ¶¶110–114). Plaintiffs do not seek actual damages but only "injunctive

19   relief" and "attorneys' fees and costs." (Compl., ¶ 114); *compare* (Compl. ¶ 119) (seeking actual

20   and statutory damages against Equifax). Plaintiffs do not specify whether they seek a

21   retrospective injunction requiring Great Lakes to cease its alleged inaccurate reporting, or a

22   prospective injunction enjoining Great Lakes from returning to the alleged inaccurate reporting in

23   the future. Either way, based on the face of the Complaint, this Court lacks subject matter

24   jurisdiction. Great Lakes has already retroactively amended its reporting of "Deferred", and thus,

25   any request for Great Lakes to remedy a past violation is moot. If, on the other hand, Plaintiffs

26   seek prospective injunctive relief enjoining Great Lakes from future inaccurate reporting based on

27   alleged historical violations, Plaintiffs lack standing because they have failed to plead facts

28   demonstrating there is a real and immediate threat that they will suffer the same injury in the

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

*(left margin)* BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

future. Moreover, Plaintiffs lack standing because the alleged harm would not be redressed by a judgment against Great Lakes. Accordingly, regardless of the injunctive relief Plaintiffs seek, the Court lacks subject matter jurisdiction and Count I must be dismissed with prejudice.

### 1.    Plaintiffs' claim is moot

To the extent Plaintiff seeks to enjoin Great Lakes from continued reporting of "D (Deferred)", Plaintiffs' claim is moot. Under Article III of the Constitution, federal courts lack jurisdiction over claims that do not present an actual "case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). The Supreme Court has "repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* at 90–91 (quotations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (quotations omitted). And, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* (quotations omitted). Where a plaintiff only seeks injunctive relief, and the relief sought has already occurred, the claim is moot. *Foster v. Carson*, 347 F.3d 742, 746 (9th Cir. 2003). Critically, "the existence of a claim for attorney fees is not sufficient to revive an otherwise moot action." *Id.*

Here, the face of the Complaint demonstrates Great Lakes has remedied the alleged harm. The only alleged "inaccuracy" with respect to Great Lakes is the reporting of borrowers' student loans as "D (Deferred)" under the "Terms Frequency" field of the report. (Compl., ¶¶ 42, 46, 89, 95, 100, 111). However, Great Lakes no longer reports borrowers' loans as "Deferred", and the Complaint confirms that fact. (Compl., ¶85) (alleging Great Lakes "fix[ed] the [alleged] problem" by the end of May 2020). Thus, the Court may dismiss Plaintiffs' single claim for injunctive relief against Great Lakes as moot based on Plaintiffs' own allegations.

To the extent the Court has any doubt from the Complaint that Plaintiffs' claim against Great Lakes is moot, Great Lakes presents a factual attack on jurisdiction, which "entitle[s] [the Court] to 'review evidence beyond the complaint without converting the motion to dismiss into a

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

motion for summary judgment.'" *Vartanian v. AMFA Local #9*, 285 F. App'x 395, 397 (9th Cir. 2008) (quoting *Safe Air*, 373 F.3d at 1039). Great Lakes has indisputably ceased reporting all borrowers' loans "Term Frequency" as "Deferred" (Leitl Decl., ¶¶ 16–18, **Exs. 3** & **4**). Great Lakes first reported borrowers' "Terms Frequency" as "Deferred(D)" on May 6, 2020. (*Id.*, ¶ 8, **Exs. 1** & **2**). On May 11, 2020, Great Lakes began receiving questions from borrowers regarding their credit scores. (*Id.*, ¶ 11). After investigation, Great Lakes discovered that the Vantage Score algorithm coded a "D (Deferred)" status as a negative credit event for some borrowers. (*Id.*, ¶ 13). On May 15, 2020, Great Lakes changed its reporting under "Terms Frequency" to reflect "M (Monthly)" repayment for all borrowers. (*Id.*, ¶ . Great Lakes back-dated its prior reporting and sent updated files to CRAs with the amended information the same day. *Id.*, ¶¶ 16–18. This adjustment occurred within 9 days of the first day that Great Lakes reported to the CRAs and 4 days after receipt of its first complaint. (*Id.*).

As a furnisher, Great Lakes has no ability to control what the CRAs do with its amended reports or when such amendments are reflected in the consumer's report. (*Id.*, ¶¶ 15, 19). Moreover, Great Lakes is uninvolved with and has no control over the Vantage Score algorithm, including whether a given credit event is deemed a score-neutral or negative scoring event. (Compl. ¶¶ 54–63); (Leitl Decl., ¶ 20). Accordingly, nearly a week before this Complaint was filed, Great Lakes did everything in its control to immediately update its reporting after learning the Vantage Score algorithm caused an unexpected lowering of scores. (Leitl Decl., ¶ 21).[1] In sum, while Great Lakes understood its original reporting was both accurate and compliant with the CARES Act based on its plain language and relevant guidance, Great Lakes immediately amended the alleged inaccuracy upon receiving notice. Thus, Plaintiffs' single claim against Great Lakes is moot, and Count I should be dismissed with prejudice.

### 2.    Plaintiffs lack standing

"[T]o have standing under Article III, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

---

[1] Notably, no other major credit scoring algorithm, including the reputable FICO Score, ascribed a negative credit scoring event to a student loan servicer's "D (Deferred)" reporting. (*Id.*, ¶ 14).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1   be redressed by a favorable judicial decision.'" *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d

2   1124, 1138 (N.D. Cal. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 , 1547 (2016)).

3   "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts

4   demonstrating each element." *Id.* (quotations omitted). "[A] plaintiff must demonstrate standing

5   separately for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir.

6   2010). "Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief

7   for an ongoing injury, does not necessarily have standing to seek prospective relief[.]" *Id.*

8           a.      ***Plaintiffs lack standing for future injunctive relief***

9           To the extent Plaintiffs seek to enjoin Great Lakes from any inaccurate reporting in the

10   future, Plaintiffs lack standing for prospective injunctive relief. "To establish Article III standing,

11   a plaintiff must show inter-alia that he faces imminent injury on account of the defendant's

12   conduct." *Mayfield*, 599 F.3d at 970. "Past exposure to harmful or illegal conduct does not

13   necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer

14   adverse effects." *Id.* "Nor does speculation or 'subjective apprehension' about future harm

15   support standing." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 184). Thus, where a plaintiff

16   "alleges past wrongs and seeks prospective injunctive relief[,]" he or she "must also 'establish a

17   real and immediate threat' that he or she will suffer the same injury in the future." *Cunha*, 254 F.

18   Supp. at 1138 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–06 (1983)). Accordingly, a

19   plaintiff has standing to seek prospective injunctive relief, "only where the plaintiff demonstrates

20   a sufficient likelihood that he will again be wronged in a similar way; that is, he must establish a

21   real and immediate threat of repeated injury." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,

22   No. EDCV19620JGBKKX, 2019 WL 6482221, at *3 (C.D. Cal. July 8, 2019).

23           Here, the face of the Complaint demonstrates there is no real and immediate threat of

24   repeated injury. The Complaint lacks any factual allegations that plausibly suggest Great Lakes is

25   likely to return to reporting borrowers' accounts as "D (Deferred)." (*See generally*, Compl.).

26   Rather, in conclusory fashion, the Complaint merely alleges:

27           Because Plaintiff Hounanian and the members of the California Subclass are

28           experiencing an unprecedented pandemic and related financial crisis, they have an

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

1   ongoing need to be able to access credit on demand. There is therefore a real and

2   immediate threat that Plaintiffs will suffer the same injury *with respect to*

3   *inaccurate future reporting*.

4   (Compl., ¶113) (emphasis added). But, "a court [is not] required to accept as true allegations that

5   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*,

6   266 F.3d at 988. And despite Plaintiffs' bald assertion, the Complaint contains no allegations

7   from which the Court could plausibly infer that Great Lakes is likely to return to its alleged

8   inaccurate reporting related to the CARES Act in the future. Accordingly, because Plaintiffs have

9   not alleged facts showing an imminent risk of repeated injury, the Complaint demonstrates on its

10  face that Plaintiffs lack standing.

11          To be sure, Great Lakes has committed to "provide FSA all coding information for future

12  credit reporting changes prior to implementation." (Leitl Decl., ¶¶ 23–25, **Ex. 5**). Great Lakes will

13  not, and has no reason to, return to its prior reporting practices. *Id.* Any future changes will be

14  approved by FSA before implementation. *Id.* Accordingly, Plaintiffs have not demonstrated any

15  real and immediate threat that they will suffer the same alleged injury in the future, nor can they.

16  Plaintiffs, therefore, lack Article III standing for prospective injunctive relief against Great Lakes,

17  and Claim I should be dismissed. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d

18  1147, 1153 (9th Cir. 2019) (affirming dismissal of claims pursuant to a Rule 12(b)(1) factual

19  challenge on mootness and lack of standing grounds).

20          **b.**      *Judgment against Great Lakes will not redress the alleged harm*

21          Finally, to the extent Plaintiffs seek injunctive relief beyond Great Lakes amending its

22  credit reporting—such as changing Plaintiffs' credit scores—any judgment against Great Lakes

23  will not redress the harm alleged in the Complaint.

24          To establish standing, Plaintiffs "must show a substantial likelihood that the relief sought

25  would redress the injury." *Mayfield*, 599 F.3d at 971 (quotations omitted). The redressability

26  requirement is not satisfied where it is "merely speculative that the alleged injury will be

27  redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

28  (quotations omitted). Courts have found no standing where the "injury inflicted by Defendant

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1   was . . . redressed before [the] action began." *Amirhamzeh v. Chase Bank USA, N.A.*, No. CV-13-

2   00527, 2013 WL 7219270, at *3 (C.D. Cal. Oct. 7, 2013). Thus, to establish redressability, the

3   plaintiff must allege "a continuing violation or the imminence of a future violation[.]" *Nat. Res.*

4   *Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000). Moreover, "[t]here is no

5   redressability, and thus no standing, where . . . any prospective benefits depend on an independent

6   actor who retains broad and legitimate discretion the courts cannot presume either to control or to

7   predict." *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123,

8   1125 (9th Cir. 2006). In short, "[r]elief that does not remedy the injury suffered cannot bootstrap

9   a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*

10  *v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

11       Here, for the same reasons Plaintiffs' claim is moot, the alleged harm is not redressable by

12  a favorable judgment because Great Lakes has already "fix[ed] the [alleged] problem." (Compl., ¶

13  85). However, to the extent Plaintiffs contend the new "Terms Frequency" reporting of "M

14  (Monthly)" is inaccurate or has not remedied their credit scoring, a favorable judgment against

15  Great Lakes will not redress such alleged, speculative harm. Loan servicers have only two options

16  in reporting under the "Terms Frequency" field—"M (Monthly)" or D (Deferred)." (Leitl Decl., ¶

17  10). Thus, if both "Monthly" *and* "Deferred" somehow result in a negative credit event for

18  consumers, Great Lakes has no other reporting options. Rather, it is the Vantage Score algorithm

19  that must be corrected. As alleged by Plaintiffs, the Vantage Score algorithm is "jointly

20  developed, operate[d], and control[led]" by Defendants "Experian, TransUnion, and Equifax"—

21  not Great Lakes. (Compl., ¶ 53). Great Lakes has no ability to alter the Vantage Score algorithm

22  or to control whether a report of "M (Monthly)" results in a negative credit scoring event.

23  (Compl., ¶¶ 54–66); (Leitl Decl., ¶¶15, 19–20). Thus, any injunctive relief against Great Lakes

24  would not redress Plaintiffs' alleged injuries.

25       **B.    Plaintiffs Fail to State a Claim for Relief**

26       Plaintiffs fail to state a claim for relief against Great Lakes because their sole cause of

27

28

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1  action is both preempted and deficient as a matter of law.[2]

2  **1.     The CCRAA claim against Great Lakes is preempted by FCRA**

3  Congress enacted FCRA "to ensure fair and accurate credit reporting, promote efficiency

4  in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*,

5  584 F.3d 1147, 1154 (9th Cir. 2009) (quotations omitted). To achieve these goals, FCRA imposes

6  "two categories of responsibilities" on "furnishers" of credit information. *Id.* (citing 15 U.S.C. §

7  1681s-2). First, furnishers are prohibited from knowingly reporting false or inaccurate

8  information under § 1681s-2(a). *Id.* The "second category of duties on furnishers . . . are triggered

9  'upon notice of dispute'—that is, when a person who furnished information to a CRA receives

10  notice from the CRA that the consumer disputes the information." *Id.* (quoting § 1681s-2(b)).

11  Upon notice, the furnisher is obligated, *inter alia*, to investigate the dispute and remedy any

12  incomplete or inaccurate reports. *Id.* These duties under the second category "arise only after the

13  furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the

14  consumer does not trigger furnishers' duties under subsection (b)." *Id.*

15  Congress enacted broad preemption provisions under FCRA, in part to impose uniform

16  and consistent credit reporting obligations. *Id.* at 1171–72 (citing FCRA legislative history,

17  S.Rep. No. 103–209, at 7 (1993)). Hence, FCRA expressly preempts any requirement or

18  prohibition under the laws of any State "relating to the responsibilities of persons who furnish

19  information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Congress, however,

20  expressly carved out CCRAA § 1785.25(a) from FCRA preemption because that provision is

21  "largely consistent" with the first category of furnisher obligations imposed by FCRA—*i.e.* the

22  prohibition of knowingly reporting inaccurate information. *Gorman*, 584 F.3d at 1172; 15 U.S.C.

23  § 1681t(b)(1)(F). Accordingly, the Ninth Circuit has distinguished between CCRAA statutory

24  provisions that "*do* impose requirements and prohibitions" on furnishers of credit information,

25  with enforcement provisions that are merely "vehicle[s] for private parties to enforce other

26  sections." *Gorman*, 584 F.3d at 1171 (emphasis original). Where a state law "impose[s]

27

28  [2] As required under Rule 12(b)(6), Great Lakes accepts Plaintiffs' allegations as true for the purposes of this portion of the Motion to Dismiss.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1  inconsistent or conflicting obligations on furnishers" which would serve to "add to a patchwork

2  of confusing obligations with which a furnisher must struggle to comply" the law is preempted.

3  *Id.* at 1172; *El-Aheidab v. Citibank (S. Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at

4  \*6 (N.D. Cal. Feb. 15, 2012) (statutes "which impose legal duties are preempted; statutes which

5  merely provide procedural remedies are not.").[3]

6       Critically, and as relevant here, it is well-settled that claims purporting to enforce

7  obligations encompassed under the second category of FCRA obligations relating to a furnishers'

8  duties after receiving notice of a dispute are preempted. Specifically, claims pursuant to CCRAA

9  §§ 1785.25(b), (c), and (f) are all expressly preempted by FCRA. *Carvalho v. Equifax Info.*

10  *Servs., LLC*, 629 F.3d 876 (9th Cir. 2010); *Lovejoy v. Bank of Am., N.A.*, No. C 13-1638 DMR,

11  2013 WL 3360898, at \*6 (N.D. Cal. July 3, 2013).

12       In light of this authority, consumers have attempted to assert a § 1785.25(a) claim to avoid

13  preemption, even though the alleged violations actually relate to furnishers' obligations under

14  other, expressly preempted, provisions. For example, courts regularly dismiss such claims styled

15  as 1785.25(a) violations yet encompassing 1785.25(b), (c), or (f) obligations. *E.g.*, *Wang v. Asset*

16  *Acceptance, LLC*, 681 F. Supp. 2d 1143, 1147–48 (N.D. Cal. 2010); *Nissou-Rabban v. Capital*

17  *One Bank (USA), N.A.*, No. 15-CV-1673-JAH (RBB), 2016 WL 6804995, at \*6 (S.D. Cal. Sept.

18  21, 2016) ("Plaintiff's second claim appears to allege a violation of Cal. Civ. Code 1785.25(b)"

19  and thus "preempted by the FCRA and dismissed with prejudice."); *Harrold v. Experian Info.*

20  *Sols., Inc.*, No. C 12–2987 WHA, 2012 WL 4097708, at \*3 (N.D. Cal. Sept. 17, 2012); *Lovejoy*,

21  2013 WL 3360898, at \*6 (holding that subsection (b) and (c) claims are preempted by FCRA).

22

23  [3] After *Gorman*, there appears to be a split amongst courts in this circuit as to whether a consumer
    has a right of action against a furnisher, irrespective of preemption. "Private plaintiffs cannot
24  bring CCRA claims against a furnisher of credit information." *Samuel v. CitiMortgage, Inc.*, No.
    C 12-5871 MEJ, 2013 WL 1501491, at \*4 (N.D. Cal. Apr. 10, 2013) (citing *Gorman* but
25  nevertheless holding no private right of action against furnishers). Although the Ninth Circuit has
    held that a § 1785.25(a) claim against CRAs is not preempted, district courts have explained that
26  plaintiffs are still foreclosed from bringing a private right of action against a furnisher of
    information because § 1785.31 "only extends to private plaintiffs bringing [CCRAA] claims
27  against credit reporting agencies and users of information." *Id.* Thus, pursuant to this authority
    and irrespective of preemption, because Great Lakes is a furnisher of credit information and not a
28  CRA or user of such information, Plaintiffs cannot maintain a private right of action against Great
    Lakes. *Id.*; *Miller v. Bank of Am., Nat. Ass'n*, 858 F. Supp. 2d 1118, 1125 (S.D. Cal. 2012).

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

Thus, a plaintiff cannot attempt to pigeonhole obligations contained in other CCRAA provisions into a § 1785.25(a) violation to avoid preemption. *Faircloth v. AR Res., Inc.*, No. 19-CV-05830-JCS, 2020 WL 2747781, at *7 (N.D. Cal. May 27, 2020); *Marseglia v. JP Morgan Chase Bank*, No. 09CV2857 JAH(RBB), 2011 WL 13134334, at *4 (S.D. Cal. Aug. 3, 2011).

Here, Plaintiff's grievance with Great Lakes concerns Great Lakes' alleged failure to promptly remedy or investigate the alleged inaccurate reporting *after* it was notified of the purported inaccuracy. (Compl., ¶¶ 83–85). Plaintiffs allege "[b]orrowers noticed and sought relief from Defendants' inaccurate reporting immediately." (Compl., ¶ 83). And Plaintiffs allege Great Lakes' customer support representative "apologized" but did not "fix the problem until the end of the month." (Compl., ¶ 85). These obligations to "investigat[e]"; "promptly notify"; and/or "provide … corrections" *after* learning that reported information may be inaccurate or disputed are *not* contained in § 1785.25(a) but, rather, subsections (b), (c), and (f). *See* CCRAA § 1785.25(b) (a furnisher who determines a credit report is not complete or accurate must "promptly notify" the reporting agency and correct the inaccuracy); § 1785.25(c) (a furnisher must notify CRAs of any disputes as to accuracy of credit reporting); § 1785.25(f) (mandating that when a furnisher receives notice of a dispute as to the accuracy of information furnished, that person shall complete an investigation within 30 days).

Because the alleged violation against Great Lakes concerns a furnisher's *obligations after receiving notice of a potentially inaccurate credit report*, and such obligations are "clearly and unambiguously addressed by the California legislature" in subsections (b), (c), and (f)—not (a), the CCRAA claim is preempted and must be dismissed. *Wang*, 681 F. Supp. 2d at 1147–48.

Finally, even if Plaintiffs' claim could be construed as a § 1785.25(a) violation, the obligations Plaintiffs attempt to impose on Great Lakes are still preempted because they are inconsistent with those under FCRA, which is contrary to Congress's intent and the Ninth Circuit's reasoning in *Gorman*, 584 F.3d at 1163. In 1997 when Congress enacted the carve-out from preemption for CCRAA § 1785.25(a), the requirements under FCRA § 1681s-2(a) were different. In the version in effect in 1997, § 1681s-2(a) did not include a definition for the requisite knowledge a furnisher must possess in reporting inaccurate information—similar to Cal.

Civ. Code § 1785.25(a). But now, § 1681s-2(a) defines "reasonable cause to believe" as "having specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D) (2020) (emphasis added).

Under FCRA, mere allegations reported directly by the consumer—such as Plaintiff's vulgar Tweets stating "Why did you fuck up everyone's credit score[?]" and "But if I missed a payment by a few days you'd be up my ass. I'm sorry social person but your company fucked up too big for we do apologize for the inconvenient. How about 20% reduction in loans? I can wait for class action too"—would be insufficient to subject Great Lakes to liability under FCRA's "reasonable cause to believe" standard. (Compl., ¶ 85); 15 U.S.C. § 1681s-2(a)(1)(D). Plaintiffs' CCRAA claim, therefore, seeks to impose obligations on Great Lakes that are contrary to those under the FCRA, rendering the claim preempted under 15 U.S.C. § 1681t(b)(1)(F). In any event, Great Lakes immediately responded and updated the reporting within nine days of its first report and four days after receiving its first complaint, fully complying with the broadest possible obligations imposed under any FCRA provision. These circumstances—where a furnisher attempted to comply after notice of potential inaccurate reporting during unprecedented times— exemplify the result *Gorman* sought to avoid: *i.e.* "impos[ing] inconsistent or conflicting obligations on furnishers" which would serve to "add to a patchwork of confusing obligations with which a furnisher must struggle to comply." 584 F.3d at 1172. Whether encompassing obligations under §§ 1785.25(b),(c), (f), or some new standard under 1785.25(a), Plaintiffs' claim seeks to impose new and/or inconsistent obligations on furnishers of credit information and, thus, is expressly preempted by FCRA.

### 2.    Plaintiffs fail to state a CCRAA § 1785.25(a) claim

If the Court disagrees that Plaintiffs' CCRAA claim fails for mootness, lack of standing, and preemption, the claim nevertheless fails because Plaintiffs have not pleaded the elements of a § 1785.25(a) claim. To prevail on a § 1785.25(a), Plaintiffs "must prove that (1) Defendant is a 'person' under the CCRAA, (2) Defendant reported information to a CRA, (3) ***the information reported was inaccurate***, (4) Plaintiff was harmed, and (5) Defendant ***knew or should have***

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1   ***known*** the information was inaccurate." *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732, 2017

2   WL 6513662, at *14 (N.D. Cal. Dec. 20, 2017) (emphasis provided). Here, Plaintiffs' fail to state

3   a CCRAA claim because the allegations demonstrate that the information reported by Great

4   Lakes was not "inaccurate." Moreover, to the extent the information was inaccurate, Plaintiffs

5   have not alleged—nor could they—that Great Lakes "knew or should have known" the

6   information was inaccurate. Accordingly, Plaintiffs' claim should be dismissed.

7                    a.      ***The information Great Lakes reported was not inaccurate***

8            Plaintiffs' claim against Great Lakes fails because Plaintiffs do not allege *how* the

9   information reported was "inaccurate," and in fact, it was not. It is Plaintiffs' burden to "make a

10  prima facie showing of inaccurate reporting." *Carvalho*, 629 F.3d at 890 (quotations omitted). To

11  be inaccurate, information must be either "patently incorrect" or "misleading in such a way and to

12  such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at

13  1163. The "failure to allege *how* the student loan information on [a plaintiff's] credit reports was

14  inaccurate is . . . fatal to" a CCRAA claim against a furnisher. *Heras v. Nelnet, Inc*., No.

15  CV166388, 2017 WL 4586334, at *5 (C.D. Cal. Apr. 28, 2017) (emphasis added). Thus, a

16  prerequisite to a § 1785.25(a) claim is Plaintiffs' plausible pleading of inaccurate reporting.

17  *Harrold*, 2012 WL 4097708, at *4.

18          Here, the alleged inaccurate information is Great Lakes' reporting of "D (Deferred)" in

19  the "Terms Frequency" field of the credit reports. (Compl., ¶¶ 42–49).[4] Nothing in the CARES

20  Act renders a report of "Deferred" inaccurate or requires Great Lakes to have reported otherwise.

21  _____

22  [4] Plaintiffs also allege that Great Lakes reported the "deferred payment start date" as
    "09/01/2020" and that Great Lakes improperly did not report borrowers were "'current' on their

23  obligations." (Compl., ¶¶ 38, 46). Though these alleged inaccuracies are not material to Plaintiffs'
    claim, given that the only alleged harm was purportedly caused by Great Lakes' "deferred"

24  reporting, it is worth noting that Plaintiffs' allegations are demonstrably false. Great Lakes did
    report borrowers were "'current' on their obligations"—the "D (Deferred)" code was only applied

25  under the "Terms Frequency" segment of the consumer report. (Leitl Decl., ¶ 8, **Exs. 1** & **2**).
    Moreover, Great Lakes reported the "deferred payment start date" as "09/30/2020"—consistent

26  with the CARES Act—not 9/1/2020 as Plaintiffs allege. *Id.* Because the Complaint references the
    consumer reports and such reports are central to Plaintiffs' claims, the Court may consider those

27  documents without converting the Rule 12(b)(6) motion to a summary judgment motion. *Coto
    Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may

28  consider materials incorporated into the complaint or matters of public record."). And even if the
    Court declines to consider these reports in connection with the Rule 12(b)(6) challenge, the Court

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

First, the CARES Act places no express obligations on student loan servicers and contains no explanatory framework with regard to how student loan servicers should comply. The CARES Act only mandates that the "Secretary of Education" "suspend all payments" without any requirements or clarifications for the loan servicers. CARES Act § 3513(a), (c). Conversely, in other provisions of the CARES Act, Congress expressly imposed obligations on servicers of federally-backed mortgage loans to ensure forbearance compliance. *Id.* § 4022(c) (requiring a mortgage loan servicer to document and provide a forbearance immediately upon request from a borrower without any additional documentation). Thus, Great Lakes' obligation both before and after the enactment of the CARES Act was to report accurate information—it had no statutory framework regarding how to comply and no affirmative statutory obligation to ensure such reporting would be uniformly treated by all credit scoring algorithms as a credit-neutral event.

Second, the CARES Act mandates that student loan payments be "suspended." *Id.* § 3513. It does not forgive any obligations to repay but only halts accrual of interest and suspends payments until September 30, 2020. (Compl., ¶ 27). "Suspend" and "defer" are synonymous. In fact, Black's Law defines "defer" as "[t]o postpone; to delay until a later date" and "suspend" as: "To interrupt; postpone; ***defer.***" BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). In short, Plaintiffs are still obligated to repay their student loans, but during the COVID-19 pandemic and pursuant to the CARES Act, those payment obligations are postponed, delayed, suspended, or *deferred*. Here, the alleged harm is not the result of inaccurate reporting but, rather, a flawed algorithm that coded a "deferred" status as a negative credit score event for some borrowers—which Great Lakes has no ability to control. (Compl., ¶¶ 53–63).[5] Because the payment obligations were only paused, not deleted, a report of "deferred" is not inaccurate. *See e.g.*, *Ramos v. Experian Info. Sols., Inc.*, No. 16-CV-06375-PJH, 2017 WL 1047019, at *5 (N.D. Cal. Mar. 20, 2017) (explaining that where "the debt" "still exist[s]" "it is not inaccurate or

---

may consider them with respect to the Rule 12(b)(1) factual challenge "without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039.
[5] Notably, a report of "Deferred" is arguably more accurate than Great Lakes' other option—a report of "Monthly"—under the CARES Act under the plain definition of those terms, as borrowers with a COVID-19 accommodation were not required to make monthly payments.

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1   misleading to report that information to a CRA").

2          **b.**  ***Great Lakes did not knowingly report inaccurate information***

3      Even if the Court determines Plaintiffs have adequately alleged Great Lakes' reporting

4   was "inaccurate," Plaintiffs have failed to allege Great Lakes "*knew or should have known*" its

5   reporting was inaccurate. Dismissal is proper where a plaintiff fails to allege facts that the

6   defendant "knowingly furnished inaccurate information." *Oya v. Wells Fargo Bank, N.A.*, No.

7   3:18-CV-01999-H-BGS, 2018 WL 5761486, at \*4 (S.D. Cal. Nov. 2, 2018). A plaintiff may not

8   simply plead conclusory allegations reciting the statutory language but also must allege a "factual

9   basis to support the allegation that [defendant] knew or should have known that

10  the . . . reporting . . . was incomplete or inaccurate." *Douglass v. USAA Sav. Bank, Inc.*, No. CV

11  16-2601-R, 2016 WL 9185315, at \*2 (C.D. Cal. July 18, 2016); *Thompson v. Nationstar Mortg.*

12  *LLC*, No. 17-CV-02864-DMR, 2017 WL 3232549, at \*6 (N.D. Cal. July 31, 2017).

13     Plaintiffs' Complaint is void of any allegations that Great Lakes knew or should have

14  known a report of "D (Deferred)" was inaccurate. (Compl., ¶ 85) (alleging Great Lakes

15  "*acknowledged* the inaccuracy of its reporting, and apologized, but refused to fix the problem

16  until the end of the month"); (Compl., ¶ 90) (alleging that Equifax, but not Great Lakes "knew or

17  should have known that Great Lakes was mischaracterizing the relief under the CARES Act as a

18  deferral"); (Compl., ¶¶ 110–114) (reciting the statutory language of § 1785.25(a) without a

19  factual basis demonstrating Great Lakes *knowingly* reported inaccurate information). Nor can

20  Plaintiffs amend their Complaint to add allegations that Great Lakes knew the information was

21  inaccurate. As Plaintiffs make clear, the CARES Act is an emergency piece of legislation,

22  precipitately passed during an unprecedented global pandemic. (Compl., ¶ 3). Given the

23  circumstances, Great Lakes had no way of knowing that reporting the "Terms Frequency" of

24  borrowers' federal student loans as "D (Deferred)" would in any way be inaccurate. Because

25  Plaintiffs have not pleaded a knowing violation of § 1785.25(a), dismissal is appropriate.

26    **C.**  <u>The Class Allegations Must Be Stricken or Dismissed</u>

27     Plaintiffs seek to represent millions of borrowers who were allegedly *impacted* by "Great

28  Lakes' reporting . . . of student loans as 'deferred' instead of reporting the loans as paid on

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

time[.]"(Compl. ¶¶ 74, *see also* ¶¶ 10, 42, 68, 79). Yet, the California Subclass brought against Great Lakes extends to countless borrowers who suffered no harm from Great Lakes' reporting, making the class definition fatally overbroad. Narrowing the class definition will not cure this deficiency, as identifying borrowers who *did* suffer damages would cause individual issues to predominate. Moreover, because both Plaintiffs lack standing and the claim is moot, the class allegations cannot survive. Accordingly, based on the face of the Complaint, the class allegations against Great Lakes should be stricken or dismissed.

### 1.      The California Subclass is overly broad

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Diacakis v. Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *4 (N.D. Cal. May 3, 2013) (quoting *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009)). Overbroad classes are not ascertainable and cannot be certified. *Id.*; *Otto v. Abbott Labs., Inc.*, No. 512CV01411-SVWDTB, 2015 WL 12776591, at *2 (C.D. Cal. Jan. 28, 2015). A proposed class is overbroad where it "would include a substantial number of people who have no claim under the theory advanced by the named plaintiff[.]"*Otto*, 2015 WL 12776591, at *2 (internal quotations omitted); *accord Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant[.]" (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514–15 (7th Cir. 2006)). Accordingly, where it is plain from the complaint that the "proposed class includes many members who have not been injured," striking the class allegations is warranted. *Lyons*, 2011 WL 6303390, at *7.

Here, Plaintiffs seek to maintain classes under Fed. R. Civ. P. 23(b)(2) and 23(b)(3). (Compl., ¶ 104). Plaintiffs define their putative "FCRA Class" to include "[a]ll residents of the United States about whom Great Lakes furnished credit information to . . . any [CRA] pertaining to the April 2020 status of loans serviced by Great Lakes." (Compl., ¶ 103). Plaintiffs also seek to represent a "California Subclass" made up of "[a]ll members of the FCRA Class who reside in California"; they bring a CCRAA claim against Great Lakes on behalf of the California Subclass.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1   (Compl. ¶¶ 103, 110–114). Plaintiffs baldly contend that—as a result of Great Lakes' allegedly

2   inaccurate credit reporting in violation of Cal. Civ. Code § 1785.25(a)—there is "a real and

3   immediate threat that Plaintiffs will suffer the same injury with respect to inaccurate future

4   reporting", and therefore, "Plaintiff Hounanian and the California Subclass are entitled to

5   injunctive relief and to the recovery of attorneys' fees and costs." (Compl., ¶¶ 111, 113–14).

6        The California Subclass is fatally overbroad because "a significant number of putative

7   class members have no claim under the asserted theory of liability[.]" *Otto*, 2015 WL 12776591,

8   at *4. Plaintiffs seek injunctive relief against Great Lakes for violations of the CCRAA.

9   Nonetheless, under binding California precedent, "***actual damages*** are a prerequisite to

10   recovering punitive damages (***and injunctive relief***) under the CCRAA." *Duarte v. J.P. Morgan*

11   *Chase Bank*, No. CV-131105, 2014 WL 12561052, at *3 (C.D. Cal. Apr. 7, 2014) (emphasis

12   added) (citing *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628, 637-38 (2007) (holding

13   that a consumer must establish actual damages to be entitled to injunctive relief for a CCRAA

14   violation); *see also Banga v. Chevron U.S.A. Inc.*, No. C-11-01498 JCS, 2013 WL 71772, at *13

15   (N.D. Cal. Jan. 7, 2013) ("To state a claim under Section 1785.31 for either damages or injunctive

16   relief, the Plaintiff must show actual damages."); *Abdelfattah v. Carrington Mortgage Servs.,*

17   *LLC*, 2013 WL 5718463, at *2 (N.D. Cal. Oct. 21, 2013).

18        Moreover, a "mere drop in Plaintiff's credit score" alone does not satisfy the "actual

19   damages requirement." *Duarte*, 2014 WL 12561052, at *3 (collecting cases, quotations omitted).

20   Likewise, "inaccurate credit reporting itself" does not "constitute[] actual damages for purposes

21   of the CCRAA." *Id.* And "prelitigation attorneys' fees" and expenses incurred "in reviewing

22   credit reports and sending demand letters" are not recoverable as actual damages under the

23   CCRAA. *Rara v. Experian Info. Sols., Inc.*, No. 16-CV-06376-PJH, 2017 WL 1047020, at *10

24   (N.D. Cal. Mar. 20, 2017) (dismissing CCRAA § 1785.25(a) claim where plaintiff failed to plead

25   actual damages, and holding a lowered credit score and attorneys' fees are not "actual damages"

26   under the CCRAA).

27        While Plaintiffs seek to maintain a CCRAA claim on behalf of each of the tens of

28   thousands of California borrowers about whom Great Lakes reported information to CRAs on

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

22

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1   their April 2020 loan statuses, it is apparent that scores of these borrowers suffered no actual

2   damages from Great Lakes reporting their loans as "Deferred" for a nine-day period. They,

3   therefore, have no CCRAA claim—even for injunctive relief. Plaintiffs' allegations that Mr.

4   Hounanian incurred "actual damages" as a result of a his lowered credit score because he was

5   allegedly "forced to abandon his search to purchase a new home" which caused him to purchase

6   storage space to allow tenants to move into his then-current home are not sufficient to save their

7   class allegations. (Compl., ¶¶ 67–71).[6] Countless California borrowers no doubt did not attempt

8   to obtain credit during this time and were not otherwise damaged by their temporarily lowered

9   credit scores, if any. This widespread lack of damages is buttressed by the face of the Complaint,

10   which demonstrates that the alleged problem has been fixed, at least by the end of May 2020.[7]

11   (Compl., ¶ 85). It is simply beyond logic that every California resident "about whom Great Lakes

12   furnished credit information . . . pertaining to the April 2020 status of loans" was similarly

13   pursuing credit-based or -contingent events that were impacted by a lowered credit score during

14   this short time period in May 2020.

15          The California Subclass, therefore, facially includes countless putative class members

16   who did not experience any actual damages associated with credit denials, credit terms, or other

17   adverse credit score-related impacts. Because the proposed California Subclass is not

18   ascertainable, it should be stricken. *See, e.g.*, *See Sanders*, 672 F. Supp. 2d at 991 (striking class

19   allegations because the class definition "necessarily includes individuals . . . who suffered no

20   damages."); *Lyons*, 2011 WL 6303390, at *7 ("To constitute an ascertainable class, class

21   members must have suffered an injury[.]"); *In re Flash Memory Antitrust Litig.*, No. C 07-0086

22   SBA, 2010 WL 2332081, at *14 (N.D. Cal. June 9, 2010) ("Even if Plaintiffs had presented

23   compelling arguments for certifying the class under Rule 23(b)(3) or (b)(2), the Court finds that

24   certification is inappropriate given Plaintiffs' failure to meet the implicit requirement that an

25   'identifiable and ascertainable class exists.'").

26

27   [6] The Complaint alleges no "actual damages" with regard to Ms. Sass. (*See generally, id.*).
[7] As the attached affidavits and exhibits further demonstrate, the "deferred" reporting was
28   actually amended by Great Lakes on May 15, 2020.

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1

### 2.     Individual questions will necessarily predominate

2      Even if the California Subclass could be sufficiently narrower to those who were impacted

3   by Great Lakes' reporting, the actual damages inquiries required for Plaintiffs' CCRAA claim

4   would still cause individual issues to predominate. For a Rule 23(b)(3) class action, striking class

5   allegations is appropriate where the proposed class definition—on its face—would require the

6   court to "engage in individual inquiries of each class member" which would "predominate the

7   litigation." *Sanders*, 672 F. Supp. 2d at 991. Thus, plaintiffs must allege facts showing that

8   predominating common questions exist and will be answered through common proof. *Id.*; Fed. R.

9   Civ. P. 23(b)(3). The Court should not "blindly rely on conclusory allegations which parrot Rule

10   23 requirements." *Pablo v. ServiceMaster Global Holdings, Inc.*, 2009 WL 2524478, at *4 (N.D.

11   Cal. Aug. 17, 2009) (quoting 2 NEWBURG ON CLASS ACTIONS § 7.26 (4th ed. 2005)).

12      Here, Plaintiffs do not seek actual damages against Great Lakes on behalf of the

13   California Class, rather only injunctive relief and attorney's fees and costs. Though it is unclear

14   from the Complaint, seemingly, Plaintiffs are not attempting to certify the California Subclass

15   against Great Lakes under Rule 23(b)(3), but rather under Rule 23(b)(2). *See, e.g.*, *Diacakis v.*

16   *Comcast Corp.*, No. C 11-3002 SBA, 2013 WL 1878921, at *9 (N.D. Cal. May 3, 2013).

17   However, in the event Plaintiffs are attempting to maintain the California Subclass under Rule

18   23(b)(3), such CCRAA class actions routinely fail on predominance grounds.

19      For example, the *Duarte* court denied Rule 23(b)(3) certification for lack of predominance

20   because all CCRAA claims—even those for injunctive relief only—require a showing of actual

21   damages. 2014 WL 12561052, at *3–4. The court found that "[m]aking such a showing of actual

22   harm on behalf of every class member is not feasible[,] as the impact of Defendant's conduct

23   necessarily varies depending on whether or not class members were denied credit opportunities,

24   incurred higher interest rates, or suffered some other kind of harm as a result of Defendant's

25   reporting." *Id.* at *3. Similarly, here, individualized inquiries would be necessary to determine

26   which class members actually suffered damages because of a lower credit score. The California

27   Subclass on its face, thus, cannot be certified under Rule 23(b)(3) and should be stricken.

28

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.** **Because Plaintiffs lack standing and their claim is moot, dismissal of the class action is appropriate**

"Where a plaintiff seeks to certify a class under Rule 23(b)(2), such plaintiff must have standing to seek the declaratory and/or injunctive relief sought on behalf of the class." *Friend v. Hertz Corp.*, No. C-07-5222 MMC, 2011 WL 750741, at *4 (N.D. Cal. Feb. 24, 2011), *aff'd,* 564 F. App'x 309 (9th Cir. 2014); *accord Morgan v. County of Yolo*, 277 Fed. Appx. 734, 735 (9th Cir. 2008) (holding, where plaintiff's claim for "unpaid wages" was "moot," plaintiff "lack[ed] standing to represent a class of employees"). Should each of the named plaintiffs lack standing, the class action must be dismissed. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003). Here, as demonstrated above, both named Plaintiffs lack standing. Further, even if Plaintiffs had standing, their and the putative class members' claims for injunctive relief are moot. Because Plaintiffs offer no plausible allegations demonstrating "any threat of continuing or future injury"—nor could they as Great Lakes amended the reporting—their Rule 23(b)(2) class necessarily fails. *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *6 ("Rule 23(b)(2) certification is . . . inappropriate when the majority of the class does not face future harm." (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007)).

The deficiencies of the California Subclass are plain from within the four corners of the Complaint, leaving no reason to delay adjudication of its infirmities. Accordingly, while striking or dismissing class allegations before discovery is rare, the Complaint commands such action.

## V.   <u>CONCLUSION</u>

Great Lakes respectfully requests the Court dismiss Count I with prejudice. The alleged harm has been remedied. Plaintiffs' CCRAA claim thus is moot, and Plaintiffs lack standing. Moreover, the claim is preempted, and Plaintiffs have failed to state a § 1785.25(a) claim because they have not alleged Great Lakes knowingly reported inaccurate information. Finally, should Plaintiffs' claim survive, the Court should strike the class allegations as facially deficient.

DEFENDANT GREAT LAKE'S MOTION TO DISMISS AND MOTION TO STRIKE- 3:20-CV-03424-EMC

1    Dated: July 17, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER
SCHRECK, LLP


By:/s/ Jonathan C. Sandler

     JONATHAN C. SANDLER
     Attorneys for Defendant
     GREAT LAKES EDUCATIONAL LOAN
     SERVICES, INC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

DEFENDANT GREAT LAKE'S MOTION TO
DISMISS AND MOTION TO STRIKE- 3:20-CV-
03424-EMC