Daniel J. McLoon (State Bar No. 109598)
djmcloon@jonesday.com
Kerry C. Fowler (State Bar No. 228982)
kcfowler@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071.2452
Telephone:   (213) 489-3939
Facsimile:   (213) 243-2539

Ann T. Rossum (State Bar No. 281236)
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone:   (949) 851-3939
Facsimile:   (949) 553-7539

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KATHERINE SASS and CODY HOUNANIAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., et al.,<br><br>Defendants. | Case No. 3:20-cv-03424-EMC<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO 12(B)(1) AND 12(B)(6); PARTIAL JOINDER IN MOTION TO DISMISS OF DEFENDANT EQUIFAX SOLUTIONS SERVICES LLC**<br><br>*[Proposed] Order submitted concurrently*<br><br>Hearing Date: August 27, 2020<br>Time:            1:30 p.m.<br>Location:      Courtroom 5—17th Floor<br>Judge:          Hon. Edward M. Chen |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 27, 2020, at 1:30 p.m., or as soon thereafter as counsel may be heard, in San Francisco Courthouse, Courtroom 5, 17th Floor, of this Court, located at 450 Golden Gate Avenue, San Francisco, 94102, before the Honorable Edward M. Chen, Defendant Experian Information Solutions, Inc. ("Experian") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' Complaint as to Experian for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Experian's Motion requests dismissal of Plaintiffs' Complaint as to Experian with prejudice on the ground that the Complaint seeks only injunctive relief under state law against Experian, which relief is preempted by the Fair Credit Reporting Act ("FCRA").  Moreover, the Complaint fails to allege any injury or harm to Plaintiffs that was caused by Experian sufficient to confer standing under either Article III of the U.S. Constitution or California's Unfair Competition Law ("UCL"), the state-law statute upon which Plaintiff Hounanian asserts the sole claim against Experian.  Finally, the Complaint does not allege conduct by Experian that violates any statute or duty that would give rise to a legally cognizable claim.  Accordingly, the Complaint must be dismissed as against Experian with prejudice.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, any reply memorandum that Experian may file, any arguments of counsel, and any other matter that the Court deems appropriate.

Dated:  July 17, 2020

Respectfully submitted,

JONES DAY

By: */s/ Kerry C. Fowler*
Kerry C. Fowler

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.    SUMMARY OF ALLEGATIONS ........................................................................ 2

      A.    THE CARES ACT ...................................................................................... 2

      B.    THE LAWSUIT .......................................................................................... 3

II.   LEGAL STANDARDS........................................................................................ 5

III.  ARGUMENT ....................................................................................................... 6

      A.    PLAINTIFF HOUNANIAN'S REQUESTED RELIEF IS PREEMPTED
            BY THE FCRA. ......................................................................................... 6

      B.    PLAINTIFF HOUNANIAN LACKS STANDING TO PURSUE HIS
            CLAIM. ....................................................................................................... 9

            1.    Plaintiff Fails To Meet The UCL's Standing Requirements..................... 9

            2.    Plaintiff Also Fails To Meet Article III's Standing Requirements. .......... 12

      C.    PLAINTIFF FAILS TO STATE A CLAIM—OR ANY LEGALLY
            COGNIZABLE THEORY OF LIABILITY—AGAINST EXPERIAN.............. 13

            1.    Plaintiff Cannot State A Claim Under The Fraudulent Prong Of The
                  UCL................................................................................................ 13

            2.    Plaintiff Cannot State A Claim Under The Unfair Prong Of The
                  UCL................................................................................................ 14

            3.    Plaintiff Hounanian's UCL Claim Also Fails Because His
                  Complaint Falls Short Of Rule 9(b)'s Requirements. ............................... 16

      D.    JOINDER TO EQUIFAX'S MOTION TO DISMISS. ........................................ 17

      E.    LEAVE TO AMEND WOULD BE FUTILE. ....................................................... 17

IV.   CONCLUSION ................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Page

**CASES**

*Altman v. PNC Mortg.*,
  850 F. Supp. 2d 1057 (E.D. Cal. 2012)..................................................................6

*Andrews v. Trans Union Corp.*,
  7 F. Supp. 2d 1056 (C.D. Cal. 1998)....................................................................7

*Anthony v. Pharmavite*,
  18-cv-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019)............................17

*Arroyo v. Pfizer, Inc.*,
  No. C-12-4030 EMC, 2013 WL 415607 (N.D. Cal. Jan. 31, 2013) .........................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................5

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*Berryman v. Merit Prop. Mgmt., Inc.*,
  152 Cal. App. 4th 1544 (2007) ...........................................................................15

*Branick v. Downey Sav. & Loan Assn*,
  39 Cal. 4th 235 (2006) .......................................................................................13

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010)...............................................................................17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .......................................................................................15

*Comm. On Child. Television, Inc. v. Gen. Food Corp.*,
  35 Cal.3d 197 (1983) .........................................................................................13

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997)................................................................................6

- ii -

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) ................................................................16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)...............................................................................13

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ................................................................................11

*Express, LLC v. Fetish Grp., Inc.*,
   464 F. Supp. 2d 965 (C.D. Cal. 2006) .................................................................13

*Flores v. EMC Mortg.*,
   997 F. Supp. 2d 1088 (N.D. Cal. 2014) ..............................................................11

*Gauci v. Citi Mortg.*,
   No. CV 11-01387 ODW, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ................7

*Grigoryan v. Bank of Am. Corp.*,
   No. ED CV 12-01219 MMM, 2012 WL 10423215 (C.D. Cal. Dec. 31 2012) .........7

*Hogan v. PMI Mortg. Ins. Co.*,
   No. C 05-3851 PJH, 2006 WL 1310461 (N.D. Cal. May 12, 2006)........................7

*Howard v. Blue Ridge Bank*,
   371 F. Supp. 2d 1139 (N.D. Cal. 2005) .............................................................7, 8

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ....................14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008)..................................................................................5

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...............................................................11

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) ..................................................................10, 11, 12

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc).................................................................6

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................................................10

- iii -

*In re NJOY, Inc. Consumer Class Action Litig.*,
   No. CV 14-00428 MMM, 2014 WL 12586074 (N.D. Cal. Oct. 20, 2014) ...............................6

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..........................................................................................................10

*Kane v. Chobani, Inc.*,
   No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................................................16

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) .........................................................................................................9, 14

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)..................................................................................................15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................1, 12

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)..................................................................................................5

*McVicar v. Goodman Glob., Inc.*,
   1 F. Supp. 3d 1044 (C.D. Cal. 2014)......................................................................................11

*Meinhold v. Sprint Spectrum L.P.*,
   No. CIV. S-07-00456 FCD EFB, 2007 WL 1456141 (E.D. Cal. May 16, 2007)...................14

*Molina v. Synchrony Bank/Walmart*,
   No. EDCV 17-1464 JGB (JEMx), 2018 WL 2721903 (C.D. Cal. Apr. 17,
   2018) ........................................................................................................................................8

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989)....................................................................................................6

*Moran v. Screening Pros, LLC*,
   No. 2:12-cv-05808-SVW-AGR, 2012 WL 10655744 (C.D. Cal. Sept. 28,
   2012) ........................................................................................................................................8

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
   No. EDCV 19-620 JGB (KKx), 2019 WL 6482221 (C.D. Cal. July 8, 2019) .........................8

*O'Connor v. Uber Techs., Inc.,*
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ...................................................................10

*Perez v. Nidek Co., Ltd.,*
   711 F.3d 1109 (9th Cir. 2013)............................................................................12

*Petrovich v. Ocwen Loan Serv., LLC,*
   No. C-15-0033 EMC, 2015 WL 3561821 (N.D. Cal. June 8, 2015) .......................10

*Profant v. Have Trunk Will Travel,*
   No. CV 11-05339-RGK, 2011 WL 6034370 (C.D. Cal. Nov. 29, 2011) ................16

*Punian v. Gillette Co.,*
   No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................14

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.,*
   No. C 11-6648 SBA, 2012 WL 3155559 (N.D. Cal. Aug. 2, 2012).........................8

*Rasmussen v. Apple Inc.,*
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) .................................................................16

*Roe v. LexisNexis Risk. Sols. Inc.,*
   No. CV 12-6284 GAF (Ex), 2013 WL 11246904 (C.D. Cal. Mar. 19, 2013) ...........8

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004)...............................................................................5

*Schulz v. Neovi Data Corp.,*
   152 Cal. App. 4th 86 (2007) ................................................................................11

*Speers v. Pre-Employ.com, Inc.,*
   No. 13-cv-01849-HU, 2014 WL 2611259 (D. Or. May 13, 2014)...........................7

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) .......................................................................................12

*Sud v. Costco Wholesale Corp.,*
   229 F. Supp. 3d 1075 (N.D. Cal. 2017), aff'd, 731 F. App'x 719 (9th Cir.
   2018) ..................................................................................................................12

*Tosco Corp. v. Cmtys. for a Better Env't,*
   236 F.3d 495 (9th Cir. 2001), overruled on other grounds by *Hertz Corp. v.
   Friend*, 559 U.S. 77 (2010) ....................................................................................5

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)........................................................................5, 16

*Washington v. CSC Credit Services, Inc.,*
    199 F.3d 263 (5th Cir. 2000)...........................................................................6, 7

*White v. E-Loan, Inc.,*
    409 F. Supp. 2d 1183 (N.D. Cal. 2006) ...............................................................8

*Wilson v. Frito-Lay N. Am., Inc.,*
    No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) .............................16

*Yeagley v. Wells Fargo & Co.,*
    No. C 05-03403 CRB, 2006 WL 193257 (N.D. Cal. 2006).....................................8

**STATUTES**

15 U.S.C. § 1681 et seq................................................................................ passim

Bus. & Prof. Code § 17200 et seq. ............................................................... passim

Pub. L. 116-136, § 3513 ............................................................................... passim

**OTHER AUTHORITIES**

12 C.F.R. § 1022.41 ..............................................................................................3

Fed. R. Civ. P. 9 .......................................................................................... passim

Fed. R. Civ. P. 12 ...........................................................................................5, 12

U.S. Const. Art. III..................................................................................1, 12, 13

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2
3
4
5
6
7
8
9
10
11
12

Plaintiffs Katherine Sass and Cody Hounanian (collectively, "Plaintiffs") make numerous claims in their Complaint relating to the credit reporting of federal student loans serviced by Defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes"), and the allegedly negative impact such reporting had on credit scores calculated by the scoring models of Defendant VantageScore Solutions, LLC ("VantageScore").  Against Defendant Experian Information Solutions, Inc. ("Experian"), however, only Plaintiff Cody Hounanian ("Plaintiff") attempts to state a claim—and that single claim is for injunctive relief under California's Unfair Competition Law (the "UCL").  Plaintiff Hounanian's sole claim against Experian fails on its face because state law claims for injunctive relief, such as the one alleged here, are preempted by the Fair Credit Reporting Act ("FCRA").  *See* 15 U.S.C. §§ 1681s(a)(1), 1681t(a).  For that reason alone, Plaintiffs' Complaint should be dismissed as against Experian.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Moreover, Plaintiffs do not—and cannot—allege any injury or harm that resulted from any conduct by Experian sufficient to confer standing under the UCL or Article III of the United States Constitution.  Plaintiffs make no claim against Experian relating to inaccurate reporting of their credit information.  Plaintiffs make no claim against Experian relating to any allegedly "incorrect" credit score reported by Experian against them.  In fact, Plaintiffs do not allege that Experian issued any credit report or credit score relating to either Plaintiff.  To establish statutory standing under the UCL, a plaintiff must allege that he has suffered injury-in-fact and lost money or property as a result of the unfair competition.  *See* Bus. & Prof. Code § 17204.  Likewise, to meet the "irreducible constitutional minimum" for Article III standing, a plaintiff must allege injury in fact that is fairly traceable to the conduct of the defendant.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here, Plaintiff Hounanian—the only Plaintiff alleging a claim against Experian—fails to meet either standard because he has not identified any dealings ***with Experian*** that could have caused his alleged harm, dooming his UCL claim and divesting this Court of subject matter jurisdiction.

27
28

At best, Plaintiff Hounanian attempts to patch together some unspecified duty that Experian purportedly violated by failing to direct VantageScore—a wholly separate entity that is

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

1    "jointly own[ed]" by the credit reporting agency Defendants, including Experian (*See* Dkt. No. 1

2    ("Compl.") ¶ 22)—to adjust its credit scoring algorithm to anticipate the allegedly "inaccurate"

3    reporting by Great Lakes of its federal student loans in light of the suspension of payment

4    obligations afforded by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

5    (Compl. ¶ 61.)

6         However, Plaintiff Hounanian does not identify a single representation made by Experian

7    that could have been disseminated to the public (let alone one likely to deceive the public)

8    sufficient to state a claim under the fraudulent prong of the UCL.  Similarly, with respect to

9    Plaintiff Hounanian's attempt to invoke the UCL's "unfair" prong, Plaintiff cannot satisfy either

10   unfair business practices test embraced by the California courts as he neither alleges that Experian

11   engaged in a practice that violates "a legislatively declared policy," nor that Experian's conduct

12   caused him injury, much less an injury outweighed by any countervailing benefits to consumers.

13   And Plaintiff falls far short of articulating a theory of liability under either prong in order to meet

14   the Rule 9(b) particularity standards that govern his claim, also warranting dismissal.  Thus,

15   Plaintiff fails to state a cognizable cause of action under the UCL.

16        It is against this background that Experian now moves to dismiss the Complaint.

17   **I.      SUMMARY OF ALLEGATIONS**

18        This dispute stems from Plaintiff Hounanian's decision to forego payment on his student

19   loans following Congress' enactment of the CARES Act.  Plaintiff now takes issue with

20   VantageScore's credit scoring algorithm as related to the CARES Act's alleged suspension of

21   payments for certain borrowers.  The following factual background is taken from the allegations

22   of the Complaint, except where noted.

23        **A.      THE CARES ACT**

24        Congress passed the CARES Act on March 27, 2020, with the goal of protecting

25   borrowers and easing the financial burdens created by COVID-19.  (Compl. ¶¶ 25-26.)  Among

26   other things, the CARES Act provides temporary relief for federal student loan borrowers,

27   including "suspend[ing] all payments due" on particular loans held by the Department of

28   Education, suspending interest accrual on those loans, and "deem[ing] each month for which a

loan payment was suspended . . . as if the borrower of the loan had made a payment for the purpose of any loan forgiveness program or loan rehabilitation program." *See* Pub. L. 116-136, § 3513.  As relevant to the consumer reporting agencies, the CARES Act states:  "During the period in which the Secretary suspends payments on a loan . . . the Secretary shall ensure that, for the purpose of ***reporting information*** about the loan ***to a consumer reporting agency***, any payment that has been suspended is treated as if it were a regularly scheduled payment made by a borrower."  *Id.* § 3513(d) (emphasis added); *see also* Compl. ¶ 36.  That is, the CARES Act speaks to the ***furnisher's*** obligations in reporting the subject loans, but is silent on credit scoring algorithms, how credit reporting agencies are to report an affected loan's balance, and the like.[1]

### B.      THE LAWSUIT

Plaintiff Cody Hounanian is a borrower who has a Department-of-Education-held student loan.  (Compl. ¶ 43.)  Experian—like defendants Equifax and Trans Union—is a consumer credit reporting agency, as that term is defined by the FCRA, 15 U.S.C. §§ 1681 et seq.  (Compl. ¶¶ 18-21.)  Experian, together with Equifax and Trans Union, jointly own a separate legal entity named VantageScore, which offers a proprietary credit-scoring model.  (Compl. ¶¶ 1, 22.)  Plaintiffs Hounanian and Sass filed this putative class action against Great Lakes, Equifax, Trans Union, Experian, and VantageScore (collectively, the "Defendants") to challenge Great Lakes' and Equifax's credit reporting and VantageScore's credit scoring algorithm after Congress enacted the CARES Act.  Plaintiffs purport to represent a nationwide class of consumers for whom Department of Education loan servicer, Great Lakes, furnished credit information to Equifax or any other consumer reporting agency, pertaining to the status of April 2020 student loans serviced by Great Lakes.  (Compl. ¶ 103.)  With respect to the sole claim made against Experian, Plaintiff Hounanian purports to represent a subclass of those consumers who reside in California (the "California Subclass").  (*Id.*)

---

[1] A data furnisher or "furnisher" is an entity that "furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."  *See* 12 C.F.R. § 1022.41; *see also* 15 U.S.C. § 1681s-2.

1    In support of his claims, Plaintiff Hounanian alleges that Experian "failed to adjust the

2  Vantage Score [sic] algorithm to account for relief that was automatically provided to student

3  loan borrowers whose loans are held by the Department of Education." (Compl. ¶ 61.)

4  Specifically, Plaintiff claims that "[r]ather than treating the suspension of borrowers' payment

5  obligations as score-neutral (or even score-positive) event, the Vantage Score [sic] algorithm used

6  by Equifax, Experian, Trans Union and Vantage treated the relief afforded to student loan

7  borrowers whose loans are held by the Department of Education as a negative event." (Compl. ¶

8  62.) Thus, Plaintiff alleges his "score dropped by nearly 33 points when calculated based on

9  Equifax's data, and by 27 points when calculated using Trans Union's data." (Compl. ¶ 67.) He

10  theorizes these decreases resulted from the "Vantage Score 3.0 model failing to properly account

11  for the fact that the CARES Act provided automatic relief to all borrowers with student loans held

12  by the Department of Education." (Compl. ¶ 52; *see also id.* ¶ 76.) Plaintiff states that once he

13  saw that his credit score had diminished, as based on Equifax's and Trans Union's data, he

14  abandoned his new home search and incurred out-of-pocket losses related to that search. (Compl.

15  ¶¶ 68-71.) Nowhere does Plaintiff allege that the VantageScore model was used **by Experian**,

16  using **Experian data**, to return any credit score relating to Plaintiff.

17    On these allegations, Plaintiff claims Experian violated the UCL's fraudulent and unfair

18  prongs. (Compl. ¶¶127-138.) With respect to the unfair prong, Plaintiff Hounanian avers that it

19  was "unfair . . . unethical, immoral, unscrupulous, oppressive, and substantially injurious for . . .

20  [the Defendants] . . . to create, use, market, sell, and promote a credit scoring model which

21  inaccurately predicts that consumers are worse credit risks based on nothing other than the fact

22  that they have federal loans as to which the federal government has suspended payment

23  requirements" and that the Defendants' scoring model "has no basis in fact and runs directly

24  counter to the public policy as stated in the CARES Act." (Compl. ¶ 133.) As to the fraudulent

25  prong, Plaintiff espouses that Experian's business practices were fraudulent "because consumers

26  and report recipients were deceived and/or were likely to be deceived by Defendants' inaccurate

27  representations with respect to Plaintiff [Hounanian's] and the California Subclass Members'

28  creditworthiness." (Compl. ¶ 135.) Plaintiff claims that there is a real and immediate threat he

1    will suffer the same injury with respect to future credit applications, and thus he and the

2    California Subclass are entitled to injunctive relief, in the form of court-ordered modification to

3    VantageScore's credit scoring algorithm.  (Compl. ¶ 137.)

4    **II.      LEGAL STANDARDS**

5        "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction

6    under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067

7    (9th Cir. 2011).  "In a facial attack," such as this one, "the challenger asserts that the allegations

8    contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for*

9    *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Dismissal for lack of subject matter

10   jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege

11   facts sufficient to establish subject matter jurisdiction."  *In re Dynamic Random Access Memory*

12   *(DRAM) Antitrust Litig.*, 546 F.3d 981, 984-985 (9th Cir. 2008).  "When subject matter

13   jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of

14   proving jurisdiction in order to survive the motion."  *Tosco Corp. v. Cmtys. for a Better Env't*,

15   236 F.3d 495, 499 (9th Cir. 2001), overruled on other grounds by *Hertz Corp. v. Friend*, 559 U.S.

16   77 (2010).

17       Even if a plaintiff can establish standing, a complaint must be dismissed under Rule

18   12(b)(6) where a plaintiff fails to allege facts which, if true, would entitle the complainant to

19   relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The pleadings must provide "more than

20   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

21   do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)  "Threadbare recitals of the

22   elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*,

23   556 U.S. at 678.  The factual allegations "must be enough to raise a right to relief above the

24   speculative level."  *Twombly*, 550 U.S. at 555.  When reviewing a motion to dismiss, only factual

25   allegations are accepted as true—not legal conclusions.  *Iqbal*, 556 U.S. at 678.

26       Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances

27   constituting fraud or mistake."  Accordingly, "[a]verments of fraud must be accompanied by 'the

28   who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*,

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

1997)).  The plaintiff not only must set forth more than neutral facts necessary to identify the

transaction, but also must explain why the statement or omission complained of was false or

misleading.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc),

superseded by statute of other grounds.  "Conclusory allegations are insufficient."  *In re NJOY,*

*Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *6

(N.D. Cal. Oct. 20, 2014); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting

fraud so that a defendant can prepare an adequate answer to the allegations.  While statements of

the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory

allegations of fraud are insufficient."); *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1070 (E.D.

Cal. 2012) ("In a fraud action against a corporation, a plaintiff must 'allege the names of the

persons who made the allegedly fraudulent representations, their authority to speak, to whom they

spoke, what they said or wrote, and when it was said or written.'").

## III.  ARGUMENT

### A.  PLAINTIFF HOUNANIAN'S REQUESTED RELIEF IS PREEMPTED BY THE FCRA.

It is well-settled that the FCRA preempts Plaintiff's request for injunctive relief under

state law—i.e., the only remedy sought against Experian.

In order to maintain uniformity, Congress included an express preemption clause in the

FCRA.  Under 15 U.S.C. § 1681t(a), the FCRA preempts state law "with respect to the collection,

distribution, or use of any information on consumers" to the extent it is inconsistent with the

FCRA.  The FCRA enumerates the private rights of action consumers may bring against credit

reporting agencies like Experian, and injunctive relief is not among the remedies listed.  *See* 15

U.S.C. §§ 1681n, 1681o.  Instead, Congress vested the power to seek and obtain injunctive relief

solely with the FTC and other agencies enforcing the FCRA.  *See* 15 U.S.C. §§ 1681s(a)(1).

In the only federal circuit-level case to consider the issue, *Washington v. CSC Credit*

*Services, Inc.*, 199 F.3d 263 (5th Cir. 2000), the Fifth Circuit unequivocally held that private

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

litigants may not seek injunctive relief against credit reporting agencies under the FCRA.  *Id.* at 268 (holding that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC").  Based on *Washington*'s rationale, a majority of courts in the Ninth Circuit also have held that injunctive relief is not available to private litigants under the FCRA.  *See Grigoryan v. Bank of Am. Corp.*, No. ED CV 12-01219 MMM (PLAx), 2012 WL 10423215, at *15 n.62 (C.D. Cal. Dec. 31 2012) ("Although the Ninth Circuit has not opined on the matter, most district courts have agreed with the Fifth Circuit's conclusion [that injunctive relief is unavailable under the FCRA].")*; Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) ("The Court considers the express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action to be a sufficiently 'clear command' from Congress that injunctive relief is not available to plaintiff.").

        In *Howard v. Blue Ridge Bank*, this Court expressly adopted the Fifth Circuit's rationale, and rejected the single case that allowed injunctive relief under the FCRA following the *Washington* opinion.[2]  371 F. Supp. 2d at 1145-46.  Indeed, since *Howard*, the Northern District courts have almost unanimously held that private litigants cannot seek equitable relief under the FCRA.  *See id.* at 1145 ("[T]he express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action to be a sufficiently 'clear command' from Congress that injunctive relief is not available to plaintiff"); *Hogan v. PMI*

___

[2] Prior to *Washington*, one court had suggested that injunctive relief could be granted under the FCRA.  *See Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056, 1084 (C.D. Cal. 1998).  However, most courts in this Circuit—including the Central District, which originally issued the *Andrews* opinion—subsequently declined to follow *Andrews*.  *See Gauci v. Citi Mortg.,* No. CV 11-01387 ODW (JEMx), 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."); *see also Speers v. Pre-Employ.com, Inc.,* No. 13-cv-01849-HU, 2014 WL 2611259, at *9-10 (D. Or. May 13, 2014) ("This court agrees with the *Washington* court, and numerous district court decisions both predating and postdating *Washington*, that the FCRA does not allow a private party to maintain an action for injunctive relief, reserving that power solely to the FTC under its enforcement authority."); *Howard*, 371 F. Supp. 2d at 1145  ("This Court is not persuaded by *Andrews* and instead concludes that the FCRA does clearly preclude injunctive relief.").

EXPERIAN'S MOTION TO DISMISS
                                              CASE NO. 3:20-CV-03424-EMC

*Mortg. Ins. Co.*, No. C 05-3851 PJH, 2006 WL 1310461, at *8-10, 12 (N.D. Cal. May 12, 2006)

(granting a motion to dismiss with prejudice, in part, "because declaratory and injunctive relief

are not available to private litigants under FCRA."); *White v. E-Loan, Inc.*, 409 F. Supp. 2d 1183,

1187 n.6 (N.D. Cal. 2006) (granting judgment on the pleadings *sua sponte* on claims for

injunctive and declaratory relief under the FCRA); *Yeagley v. Wells Fargo & Co.*, No. C 05-

03403 CRB, 2006 WL 193257, at *2 (N.D. Cal. 2006) ("By limiting the remedies for private

rights of action to damages and attorneys' fees Congress demonstrated that it did not intend for

private litigants to obtain injunctive or declarative relief.").

Accordingly, because injunctive relief is not available to private litigants under the FCRA,

the courts of the Ninth Circuit—including again, the courts of the Northern District—also agree

that UCL claims for injunctive relief are inconsistent with, and therefore are preempted by, the

FCRA.  *See Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.*, No. C 11-6648 SBA, 2012

WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012) ("[T]his Court has uniformly concluded that a UCL

claim for injunctive relief is preempted by the FCRA."); *see also Noriesta v. Konica Minolta Bus.*

*Sols. U.S.A., Inc.*, No. EDCV 19-620 JGB (KKx), 2019 WL 6482221, at *4 (C.D. Cal. July 8,

2019) (finding plaintiff's request for injunctive relief under the UCL is preempted by the FCRA);

*Molina v. Synchrony Bank/Walmart*, No. EDCV 17-1464 JGB (JEMx), 2018 WL 2721903, at *4

(C.D. Cal. Apr. 17, 2018) (citations omitted) ("Several courts within this Circuit have held FCRA

preempts California's UCL as applied to furnishers of credit information.  The Court agrees and

holds Plaintiff's UCL claim is preempted by FCRA."); *Roe v. LexisNexis Risk. Sols. Inc.*, No. CV

12-6284 GAF (Ex), 2013 WL 11246904, at *7 (C.D. Cal. Mar. 19, 2013) ("The Court finds that

Plaintiff's UCL claims are preempted."); *Moran v. Screening Pros, LLC*, No. 2:12-cv-05808-

SVW-AGR, 2012 WL 10655744, at *8 (C.D. Cal. Sept. 28, 2012); *Howard*, 371 F. Supp. 2d at

1146 ("Because the Court finds that plaintiff's § 17200 claim is preempted by the FCRA, he

cannot obtain an injunction for this claim.").

Here, Plaintiff attempts to evade the FCRA by seeking injunctive relief against Experian

under the UCL.  Yet, one need only consider the relief Plaintiff Hounanian seeks against Experian

to understand exactly why the FCRA preempts his requested injunctive relief.  Specifically,

1   Plaintiff seeks to require Experian to somehow force VantageScore to change its algorithm and

2   scoring models so that it ignores accurate, relevant, and material information about a consumer's

3   payment history, including reporting a loan as though the consumer made payments when he, in

4   fact, did not.[3]  But neither the FCRA nor the CARES Act imposes such an obligation on

5   Experian.  Indeed, obligating Experian to ignore a consumer's credit history would, as a practical

6   matter, result in *less* accurate credit reporting and, thus, potentially run afoul of the FCRA.  *See*

7   15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it

8   shall follow reasonable procedures to assure maximum possible accuracy of the information

9   concerning the individual about whom the report relates.").

10      At bottom, the FCRA grants the power of enforcement through injunctive relief

11  exclusively to the FTC.  Plaintiff cannot invoke state laws to sidestep this exclusive grant of

12  power.  Plaintiff's UCL claim is preempted.

13      **B.      PLAINTIFF HOUNANIAN LACKS STANDING TO PURSUE HIS CLAIM.**

14          **1.      Plaintiff Fails To Meet The UCL's Standing Requirements.**

15      Plaintiff's UCL claim fails for the additional reason that Plaintiff does not—and cannot—

16  allege facts sufficient to confer UCL statutory standing to pursue his claim.  Only "a person who

17  has suffered injury in fact and has lost money or property *as a result of* the unfair competition"

18  can assert a UCL claim.  Bus. & Prof. Code § 17204; *see Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th

19  310, 322 (2011).  Where a plaintiff alleges a UCL claim based on alleged fraudulent misconduct,

20  courts interpret this causation requirement to demand actual reliance on a defendant's alleged

21  misrepresentation and that the plaintiff suffered economic injury as a result.  *Kwikset*, 51 Cal. 4th

22  at 326 (A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL

23  action must demonstrate actual reliance on the allegedly deceptive or misleading statements");

24

25          [3] For example, Plaintiff would require Experian and VantageScore's credit scoring models
    to ignore material differences between two dissimilar consumers.  One consumer with a
26  Department of Education held education loan may have saved for a rainy day and continued to
    make payments on his loan, notwithstanding the relief provided by the CARES Act.  At the same
27  time, a different consumer may have taken advantage of the suspended payments, and elected not
    to continue making payments.  It is illogical to assume these two consumers pose the same credit
28  risk to a potential lender.

1   *see also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) ("UCL fraud

2   plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under

3   the UCL); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1014 (N.D. Cal. 2013) ("A

4   plaintiff may establish that the defendant's misrepresentation is an immediate cause of the

5   plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would

6   not have engaged in the injury-producing conduct.").  Likewise, the majority of California federal

7   courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists

8   of a defendant's misrepresentation or omission, a plaintiff must have actually relied on the

9   misrepresentation and suffered economic injury as a result of that reliance to have standing to sue.

10  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Backhaut v. Apple, Inc.*, 74 F.

11  Supp. 3d 1033, 1047-48 (N.D. Cal. 2014); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013

12  WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013); *In re iPhone Application Litig.*, 6 F. Supp. 3d at

13  1013 ("California courts have held that when the 'unfair competition' underlying a plaintiff's

14  UCL claim consists of defendant's misrepresentation, a plaintiff must have actually relied on the

15  misrepresentation, and suffered economic injury as a result of that reliance, in order to have

16  standing to sue.").  Thus, most courts require at the pleading stage allegations of actual reliance

17  and injury under both the unfair and fraudulent prongs of the UCL where such claims are

18  premised on alleged misrepresentations.

19          But even for those courts that do not require allegations of actual reliance, a plaintiff must

20  still satisfy statutory standing and allege that he suffered economic injury **because of** any alleged

21  act or omission by the defendant.  *See Petrovich v. Ocwen Loan Serv., LLC*, No. C-15-0033

22  EMC, 2015 WL 3561821, at *7 (N.D. Cal. June 8, 2015) (requiring a plaintiff pleading a UCL

23  claim to allege "(1) what money was lost; (2) what property was lost; (3) the precise misconduct

24  asserted as an unfair practice; or (4) how that loss is connected to the misconduct alleged"); *see*

25  *also In re Firearm Cases*, 126 Cal. App. 4th 959, 981 (2005) (holding the unfair prong of the

26  UCL requires proof of causation—i.e., a "link between a defendant's business practice and the

27  alleged harm").  Plaintiff cannot meet either standard here, rendering both his unfair and

28  fraudulent prong claims infirm.

1         Plaintiff's Complaint contains no facts suggesting that he actually sustained economic

2   injury *as a result of* any alleged act or omission by Experian.  Indeed, Plaintiff neither points to a

3   statement made by Experian on which he purportedly relied, nor alleges any facts supporting that

4   he suffered economic harm because of Experian.  *See McVicar v. Goodman Glob., Inc.*, 1 F.

5   Supp. 3d 1044, 1052 (C.D. Cal. 2014) (dismissing claim under the fraudulent prong of the UCL

6   where plaintiff fails to plead allegations that the plaintiff, as opposed to the public, actually saw

7   the defendant's representations); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112-13 (S.D. Cal.

8   2011) (finding plaintiff lacked standing to sue where plaintiff failed to allege he actually viewed

9   the alleged misrepresentation before making a purchase decision); *see also In re Firearm Cases*,

10   126 Cal. App. 4th at 981 ("The UCL provisions are not so elastic as to stretch the imposition of

11   liability to conduct that is not connected to the harm by causative evidence.").  Plaintiff does not

12   allege that Experian reported his loan inaccurately under the FCRA and/or CARES Act.  Nor

13   does Plaintiff allege that Experian issued a credit report or a VantageScore based on Experian's

14   data relating to Plaintiff, let alone that Plaintiff relied on such a report or score in allegedly

15   abandoning his search to purchase a home or incurring losses.  (Compl. ¶¶ 68-70.)  Instead,

16   Plaintiff alleges that his VantageScore "dropped by nearly 33 points when calculated based on

17   Equifax's data, and by 27 points when calculated using Trans Union's data."  (Compl. ¶ 67.)

18   When he received his VantageScore(s) based on Equifax's and Trans Union's data, Plaintiff

19   alleges he incurred out-of-pocket losses.  (Compl. ¶¶ 68-71.)  But simply because Plaintiff

20   purportedly incurred damages stemming from credit scores based on *other* credit reporting

21   agencies' credit scores or credit reports does not mean that Plaintiff meets the UCL's standing

22   requirements *as to Experian*.  *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92 (2007)

23   (holding that where a plaintiff names multiple defendants, the UCL limits standing to only those

24   defendants with whom plaintiff had dealings); *see Flores v. EMC Mortg.*, 997 F. Supp. 2d 1088,

25   1119 (N.D. Cal. 2014) (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960

26   (2002)) ("A defendant's liability must be based on his personal 'participation in the unlawful

27   practices' and 'unbridled control' over the practices that are found to violate section 17200 or

28   17500.").  Moreover, Plaintiff does not even plead that Experian had the ability to unilaterally

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

1    change the conduct of Equifax, Trans Union, and/or VantageScore.  The UCL does not impose

2    liability where, as here, any alleged harm "is not connected . . . by causative evidence."[4]  *See In re*

3    *Firearm Cases*, 126 Cal. App. 4th at 981.  Thus, Plaintiff's Complaint fails to meet the UCL's

4    standing requirements.

5                **2.        Plaintiff Also Fails To Meet Article III's Standing Requirements.**

6            Not only does Plaintiff Hounanian fail to allege facts sufficient to meet the UCL's

7    statutory standing requirements, but Plaintiff does not—and cannot—even allege an injury-in-fact

8    sustained as a result of ***Experian***, such that he satisfies the minimum requirements of Article III

9    standing.  This fundamental flaw of Plaintiff's Complaint is jurisdictional and mandates dismissal

10   pursuant to Rule 12(b)(1).

11           Under Article III of the Constitution, the judicial power of the United States, vested in the

12   federal courts, extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1-2.  To

13   prevent "federal courts [from] exceed[ing] their authority," the law of Article III standing

14   "confines the federal courts to a properly judicial role" by "limit[ing] the category of litigants

15   empowered to maintain a lawsuit in federal court."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

16   (2016) (citations omitted).  This "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560-61,

17   requires a showing that a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the

18   challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

19   decision."  *Spokeo*, 136 S. Ct. at 1547; *see also Lujan*, 504 U.S. at 560-61.

20           As stated above, Plaintiff Hounanian alleges no wrongdoing perpetrated by Experian that

21   could plausibly lead to his claimed injury or harm.  *See Sud v. Costco Wholesale Corp.*, 229 F.

22   Supp. 3d 1075, 1081 (N.D. Cal. 2017), aff'd, 731 F. App'x 719 (9th Cir. 2018) ("A key

23   component of Article III standing is "traceability, i.e., a causal connection between the injury and

24   the actions" about which a plaintiff complains.  Thus, in cases "where there are multiple

25   defendants and multiple claims, there must exist at least one named plaintiff with Article III

26   standing as to each defendant and each claim . . . ." (internal citations omitted)); *Perez v. Nidek*

27   _____

28        [4] Likewise, no court has imposed liability on a consumer reporting agency under the
     FCRA where it did not generate an underlying consumer report.

1  *Co., Ltd.*, 711 F.3d 1109, 1113-14 (9th Cir. 2013) (affirming dismissal on Article III standing

2  grounds where plaintiff failed to trace alleged injury to the defendants' actions).  There is no

3  allegation that Experian issued a credit report regarding Plaintiff; there is no allegation that a

4  credit score was generated based on Experian data; there is no allegation that Plaintiff was denied

5  or lost out on a credit opportunity as a result of any credit information reported by Experian.

6  Moreover, there is no claim that Experian itself was the proximate cause of any other defendant's

7  conduct.  As a result, there is simply no connection alleged between the harm Plaintiff Hounanian

8  allegedly sustained and any conduct by Experian sufficient to confer Article III standing.[5]

9      **C.      PLAINTIFF FAILS TO STATE A CLAIM—OR ANY LEGALLY
               COGNIZABLE THEORY OF LIABILITY—AGAINST EXPERIAN.**
10

11          **1.     Plaintiff Cannot State A Claim Under The Fraudulent Prong Of The
                    UCL.**

12          Even if Plaintiff had standing under the UCL or Article III, his claim brought under the

13  fraudulent prong of the UCL still fails because he does not allege that Experian made statements

14  likely to deceive a reasonable consumer.  The UCL proscribes a business practice under the

15  fraudulent prong if "members of the public are likely to be deceived" by the defendant's conduct.

16  *See Comm. On Child. Television, Inc. v. Gen. Food Corp.*, 35 Cal.3d 197, 211 (1983), superseded

17  by statute by *Branick v. Downey Sav. & Loan Assn*, 39 Cal. 4th 235 (2006).  To meet this

18  standard, a plaintiff must allege that the defendant made a representation that was actually

19  disseminated to the public. *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal.

20  2006).

21          Plaintiff's Complaint fails to meet this basic standard.  Plaintiff's Complaint contains a

22  lone paragraph alleging that Experian's practices were fraudulent because "consumers and report

23  recipients were deceived and/or likely to be deceived by Defendants' inaccurate representations

24

25      [5] Plaintiff additionally lacks Article III standing to assert his claim for injunctive relief
    because he does not allege a "certainly impending" threatened or future injury.  *Davidson v.*

26  *Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  Plaintiff generally alleges that
    "because of the ubiquity of Defendants' reports in credit screening, there is a real and immediate

27  threat Plaintiff Hounanian will suffer the same injury with respect to future credit applications."
    (Compl. ¶ 137.)  But without a concrete plan to apply for credit alleged or further facts linking his

28  request for injunctive relief to Experian, he fails to meet Article III's standing requirements.

EXPERIAN'S MOTION TO DISMISS
                                        CASE NO. 3:20-CV-03424-EMC

with respect to Plaintiffs . . . ."  (Compl. ¶ 135.)  But as set forth above, Plaintiff does not identify *any representation* made by Experian that could have been disseminated to the public, not to mention one likely to deceive the public.[6]  There is simply no allegation that Experian issued a credit report or credit score relating to Plaintiff.  Likewise, Plaintiff fails to allege his reliance on a statement made by Experian, as required for a fraudulent-prong claim.  *Kwikset*, 51 Cal. 4th at 326; *see also* Compl. ¶ 67.  Basic federal pleading standards demand more, and Plaintiff's UCL fraudulent-prong claim should be dismissed.

### 2.  Plaintiff Cannot State A Claim Under The Unfair Prong Of The UCL.

Plaintiff also fails to state a claim under the UCL's unfair prong.  Plaintiff has not alleged anything to differentiate Experian's allegedly unfair conduct from its allegedly fraudulent conduct.  (Compl. ¶¶ 52, 65-71, 133 (characterizing VantageScore's credit scoring model as inaccurate).)  Because Plaintiff's unfair prong claim is premised on representations he characterizes as "fraudulent," "inaccurate," and "deceptive, (*see, e.g.*, Compl. ¶¶ 2, 44, 95, 127, 133, 135), his claims sound in fraud, and the Court need not analyze unfairness.  *See Meinhold v. Sprint Spectrum L.P.*, No. CIV. S-07-00456 FCD EFB, 2007 WL 1456141, at *6 (E.D. Cal. May 16, 2007) (where course of fraudulent conduct alleged, court should analyze UCL claim as fraud claim, even if unfairness alleged); *see Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that cause of action under the unfair prong of the UCL did not survive where the "cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the FAL, CLRA, and fraudulent prong of the UCL); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (dismissing unfair prong UCL cause of action where "plaintiffs' unfair prong claims overlap entirely with their claims of fraud"), aff'd, 464 F. App'x. 651 (9th Cir. 2011).

---

[6] Plaintiff's Complaint also does not allege how the public may be deceived by Experian's purported (but nonexistent, here) actions or omissions.  This is particularly true because—with respect to the other defendants whose data was allegedly used in calculating credit scores—the VantageScore model appears to have accurately taken into account the balance carried on Plaintiff's student loan.  (*See* Compl. ¶ 67.)  It is difficult to understand how a score considering a consumer's nonpayment (though not delinquency) on a loan would be likely to deceive the public.

1    Nevertheless, Plaintiff's UCL claim also independently fails because he does not allege

2    that Experian engaged in unfair conduct.  As applied to consumer transactions, a business practice

3    can be deemed "unfair" under the UCL in two ways.  *See Lozano v. AT&T Wireless Servs., Inc.*,

4    504 F.3d 718, 735-36 (9th Cir. 2007).  First, the practice can be unfair if it violates "some

5    legislatively declared policy."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

6    163, 186 (1999).  Second, the practice can be unfair "if the consumer injury is substantial, is not

7    outweighed by any countervailing benefits to consumers or to competition, and is not an injury

8    the consumers themselves could reasonably have avoided."  *Berryman v. Merit Prop. Mgmt., Inc.*,

9    152 Cal. App. 4th 1544, 1555 (2007).

10    Here, Plaintiff does not allege an unfair business practice that meets either standard.  As to

11    the first standard, Plaintiff fails to identify any "legislatively declared policy" that Experian

12    purportedly violated in dealings with the Plaintiff.  As a threshold matter, Plaintiff never alleges

13    ***any*** dealings with Experian, let alone ones that violated a "legislatively declared policy."  For

14    example, one might imagine allegations that a credit reporting agency inaccurately reported a

15    federal student loan as delinquent in contravention of the legislatively declared policy of the

16    CARES Act that the payment obligation on such loans was suspended and that the credit

17    reporting should not reflect delinquencies.  However, there are no such allegations against

18    Experian because there is no allegation Experian issued a credit report about Plaintiff.  But even

19    assuming Plaintiff had received a credit report or credit score based on Experian's data, the

20    CARES Act relates to ***furnishers'*** obligations in reporting educational loan to credit reporting

21    agencies.  *See* Pub. L. 116-136, § 3513(d).  Likewise, the CARES Act does not instruct credit

22    reporting agencies ***or*** furnishers to treat consumers who take advantage of suspended loan

23    payments identically to those who continued to pay on their loans.  *See id.*  Further, the CARES

24    Act does not remotely discuss credit scoring—a highly individualized algorithm that takes all

25    information reported about a consumer into account (including collection of data about borrowing

26    and repayment history).  (*See* Compl. at 17 n.3 (VantageScore website).)  Thus, Plaintiff's alleged

27    "unfair business practice" is divorced from any "legislatively declared policy."

28

1   With respect to the second unfair test, as set forth in Section III.B.1 above, Plaintiff fails

2   to allege any injury, let alone a "substantial" injury, caused by Experian's conduct.  Plaintiff

3   Hounanian's alleged "unfair business practice" therefore also falls short of California courts'

4   second unfair prong test.  Because he does not allege facts meeting the threshold for unfair

5   business practices, the Court should dismiss Plaintiff's UCL claim.

6   ### 3.   Plaintiff Hounanian's UCL Claim Also Fails Because His Complaint Falls Short Of Rule 9(b)'s Requirements.

7

8   Even if Plaintiff Hounanian had generally alleged the elements sufficient to state a claim

9   under the UCL—which he has not—Plaintiff's UCL claim still fails because he has not pleaded it

10  with Rule 9(b)'s particularity requirements.  Although Plaintiff has not alleged fraud as a cause of

11  action, his claim under the UCL is "grounded in fraud' or . . . 'sound[s] in fraud'" and thus

12  subject to Rule 9(b)'s heightened pleading requirements.  *Kearns v. Ford Motor Co.*, 567 F.3d

13  1120, 1125 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1103-04); *see also Rasmussen v. Apple*

14  *Inc.*, 27 F. Supp. 3d 1027, 1043 (N.D. Cal. 2014) (analyzing UCL and CLRA claims under Rule

15  9(b)); *Arroyo v. Pfizer, Inc.*, No. C-12-4030 EMC, 2013 WL 415607, at *7 (N.D. Cal. Jan. 31,

16  2013) (concluding Rule 9(b) applies to UCL unfair and where unified course of conduct that is

17  the basis for plaintiff's claims sound in fraud); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025

18  (N.D. Cal. 2012) ("Rule 9(b)'s heightened pleading standards apply to all UCL, FAL, or CLRA

19  claims that are grounded in fraud.").

20  Here, Plaintiff's UCL claim—both under the fraudulent and unfair prongs—is premised

21  on unspecified representations that he characterizes as "fraudulent," "inaccurate," and

22  "deceptive."  (Compl. ¶¶ 133, 135.)  Thus, Plaintiff must meet the heightened pleading standard

23  of Rule 9(b) irrespective of what UCL prong he alleges Experian violated.  *See Wilson v. Frito-*

24  *Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) (finding

25  that the complaint sounded in fraud where plaintiffs "base[d] their unlawful business practices

26  claims on Defendants' alleged violations of underlying laws by way of allegedly fraudulent or

27  deceptive labeling and advertising practices"); *Profant v. Have Trunk Will Travel*, No. CV 11-

28  05339-RGK (OPx), 2011 WL 6034370, at *3-4 (C.D. Cal. Nov. 29, 2011) (requiring plaintiffs to

EXPERIAN'S MOTION TO DISMISS
CASE NO. 3:20-CV-03424-EMC

1    meet the heightened pleading requirements of Rule 9(b) for their fraudulent business practice,

2    unfair business practice, and false advertising UCL claims because they were all based on the

3    same allegations that were grounded in fraud.  Plaintiff fails to do so.

4         Plaintiff's entire Complaint includes only two sentences mentioning **his** VantageScore, as

5    opposed to generalized allegations about the public.  (*See* Compl. ¶ 67.).  But those allegations do

6    not inform Experian of the who, what, when, where, and how underlying Plaintiff's claim.  For

7    example, Plaintiff does not allege when and whether Plaintiff obtained a VantageScore (both

8    before and after the CARES Act's promulgation), by what means, or whether Plaintiff viewed his

9    score multiple times (and when).  *See Anthony v. Pharmavite*, 18-cv-02636-EMC, 2019 WL

10   109446, at *5 (N.D. Cal. Jan. 4, 2019) (concluding plaintiffs fail to meet Rule 9(b) particularity

11   requirements where the plaintiffs' complaint was "devoid of any allegations regarding whether

12   Plaintiffs saw the asterisk, read the corresponding disclaimer, and if they did read it, how the

13   disclaimer affected their purchasing decision" and rejecting plaintiffs' vague and generalized

14   allegations that do not specify that the plaintiffs saw or relied on the challenged advertisement).

15   Plaintiff's Complaint fails to meet the requirements of Rule 9(b), providing the Court another

16   basis to dismiss his UCL claim.

17        **D.     JOINDER TO EQUIFAX'S MOTION TO DISMISS.**

18        In addition to the grounds stated above, Plaintiff Hounanian's UCL claim should be

19   dismissed for the additional reasons set forth in Section III.B.2 of the Motion to Dismiss filed by

20   Defendant Equifax.  To the extent not already stated herein, Experian joins in the arguments

21   advanced in Section III.B.2 of Equifax's memorandum of points and authorities in support of its

22   Motion to Dismiss.

23        **E.     LEAVE TO AMEND WOULD BE FUTILE.**

24        A court may dismiss a complaint with prejudice where the plaintiff cannot allege any

25   additional facts to support a cause of action and leave to amend would be futile.  *See, e.g.*,

26   *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir. 2010) (explaining that leave to

27   amend can be denied if amendment would be futile).  Given the deficiencies of Plaintiff's

28

1    Complaint, including that the FCRA preempts his UCL claim, leave to amend would be futile.

2    The Court should dismiss Plaintiff's claims against Experian with prejudice.

3    **IV.      CONCLUSION**

4           Even if all Plaintiff Hounanian's factual allegations are taken as true, (1) none of the relief

5    sought is available to him (or to any putative class member), (2) he does not meet the threshold

6    standing requirements, and (3) he fails to state a UCL claim upon which relief can be granted.

7    Accordingly, Experian respectfully requests the Court dismiss this action against Experian with

8    prejudice.

9    Dated:  July 17, 2020                              Respectfully submitted,

10                                                      JONES DAY

11

12                                                      By:  */s/ Kerry C. Fowler*
                                                             Kerry C. Fowler

13                                                      Attorneys for Defendant
14                                                      EXPERIAN INFORMATION SOLUTIONS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28