RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
JAMES K. ROTHSTEIN (S.B. #267962)
jrothstein@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: +1 415-984-8700
Facsimile: +1 415-984-8701

ELIZABETH L. MCKEEN (S.B. #216690)
emckeen@omm.com
DANIELLE N. OAKLEY (S.B. #246295)
doakley@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone: +1 949-823-6900
Facsimile: +1 949-823-6994

Attorneys for Defendant
TRANSUNION LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KATHERINE SASS and CODY HOUNANIAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREAT LAKES EDUCATIONAL LOAN SERVICES, INC. et al., <br><br> Defendants. | Case No. 20-cv-3424-EMC <br><br> **DEFENDANT TRANSUNION LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:  August 27, 2020 <br> Time:  1:30 p.m. <br> Place:  Courtroom 5 <br> Judge: Edward M. Chen |

1    TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

2           PLEASE TAKE NOTICE that on August 27, 2020, at 1:30 p.m., or as soon thereafter as

3    counsel may be heard before the Honorable Edward M. Chen, in Courtroom 5, 17th Floor of this

4    Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant

5    TransUnion LLC, will and hereby does move the Court for an order dismissing the claims against

6    it in Plaintiffs Katherine Sass and Cody Hounanian's Complaint, pursuant to Rules 12(b)(1) and

7    12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject-

8    matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted.

9           This Motion is based upon this Notice, the attached Memorandum of Points and

10   Authorities, the arguments of counsel, all of the pleadings and other papers on file in this action,

11   and such other matters as may be presented at the hearing on this Motion or prior to the Court's

12   decision.

13          Dated:  July 17, 2020                    O'MELVENY & MYERS LLP

14                                                   _/s/ Danielle N. Oakley_

15

16                                                   Attorneys for Defendant
                                                     TRANSUNION LLC

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

      A.    The Fair Credit Reporting Act ................................................................. 3

      B.    The CARES Act ...................................................................................... 4

      C.    Mr. Hounanian's Claim Against TransUnion ......................................... 6

ARGUMENT ........................................................................................................................ 6

    I.    MR. HOUNANIAN HAS NOT ALLEGED THAT TRANSUNION VIOLATED THE UCL. ......................................................................................... 6

      A.    Mr. Hounanian Has Not Alleged That Transunion Engaged In Any Unfair Business Practice. ........................................................................ 7

      B.    Mr. Hounanian Has Not Alleged Any Fraudulent Conduct By TransUnion. ............................................................................................. 13

    II.    MR. HOUNANIAN LACKS STANDING TO PURSUE HIS CLAIM AGAINST TRANSUNION. ............................................................................... 15

      A.    Mr. Hounanian Lacks Article III Standing To Seek Injunctive Relief Because His Alleged Harm Is Not Likely To Recur. ................... 15

      B.    Mr. Hounanian Lacks Statutory Standing Under the UCL Because He Does Not Allege To Have Lost Money Or Property As A Result Of Any Conduct By TransUnion. ........................................................... 16

    III.    MR. HOUNANIAN'S CLAIM IS PREEMPTED BY THE FCRA. .................... 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

Page

## CASES

*Abed-Stephens v. First Fed. Bank of Cal.*,
  2010 WL 1266833 (C.D. Cal. Mar. 30, 2010) ........................................................ 14

*Beasley v. Lucky Stores, Inc.*,
  400 F. Supp. 3d 942 (N.D. Cal. 2019) .................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 12

*Bullwinkle v. U.S. Bank, Nat'l Ass'n*,
  2013 WL 5718451 (N.D. Cal. Oct. 21, 2013) ......................................................... 15

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ........................................................................... passim

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................... 9

*Chulick-Perez v. Carmax Auto Superstores Cal., LLC*,
  2014 WL 2154479 (E.D. Cal. May 22, 2014) ......................................................... 13

*Davis v. Carrington Mortg. Servs., LLC*,
  --- F. Supp. 3d ---, 2020 WL 1853317 (D. Nev. Apr. 10, 2020) .............................. 9

*El-Aheidab v. Citibank*,
  2012 WL 506473 (N.D. Cal. Feb. 15, 2012) ........................................................... 17

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ............................................................................ 10, 14

*Fair Isaac Corp. v. Experian Info. Sols., Inc.*,
  650 F.3d 1139 (8th Cir. 2011) ............................................................................... 11

*Finley v. TransUnion*,
  2020 WL 408987 (N.D. Cal. Jan. 24, 2020) ........................................................... 12

*Galope v. Deutsche Bank Nat'l Tr. Co.*,
  666 F. App'x 671 (9th Cir. 2016) .......................................................................... 10

*Gauci v. Citi Mortg.*,
  2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ......................................................... 17

*Gorman v. Wolpoff & Abramson, LLP*,
  584 F.3d 1147 (9th Cir. 2009) ................................................................................. 8

*Gregory v. Albertson's, Inc.*,
  104 Cal. App. 4th 845 (2002) .................................................................................. 9

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ......................................................................... 7, 9, 14

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  810 F. Supp. 2d 1100 (S.D. Cal. 2011) ................................................................... 11

TRANSUNION'S MOTION TO DISMISS
20-CV-3424-EMC

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........................................................................................... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)......................................................................... 13, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ......................................................................................... 15

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........................................................................................... 16

*Leitner v. Sadhana Temple of N.Y., Inc.*,
2014 WL 12588643 (C.D. Cal. Oct. 17, 2014) ...................................................... 11

*Meza v. Experian Info. Sols., Inc.*,
2019 WL 6840390 (E.D. Cal. Dec. 16, 2019) ....................................................... 14

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010).............................................................................................. 15

*Peacock v. 21st Am. Brewery Cafe, LLC*,
2018 WL 452153 (N.D. Cal. Jan. 17, 2018) ......................................................... 15

*People v. Sarpas*,
225 Cal. App. 4th 1539 (2014) ............................................................................. 10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007)................................................................................. 10

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.*,
2012 WL 3155559 (N.D. Cal. Aug. 2, 2012)......................................................... 17

*Ramirez v. Trans Union, LLC*,
899 F. Supp. 2d 941 (N.D. Cal. 2012) .................................................................. 17

*Roe v. LexisNexis Risk. Sols. Inc.*,
2013 WL 11246904 (C.D. Cal. Mar. 19, 2013) ..................................................... 17

*Shadoan v. World Sav. & Loan Ass'n*,
219 Cal. App. 3d 97 (1990) .................................................................................. 15

*Shaker v. Nature's Path Foods, Inc.*,
2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ......................................................... 6

*Shaw v. Experian Info. Sols., Inc.*,
891 F.3d 749 (9th Cir. 2018).......................................................................... 2, 8, 9

*Smith v. Auto Mashers, Inc.*,
85 F. Supp. 2d 638 (W.D. Va. 2000) ...................................................................... 6

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................ 13

- iii -

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

*Wright v. Gen. Mills, Inc.*,
   2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ............................................................ 6

4

**STATUTES**

5

15 U.S.C. § 1681 *et seq.* ................................................................................................. 1

6

15 U.S.C. § 1681e ............................................................................................................ 4

7

15 U.S.C. § 1681e(b) ...................................................................................................... 4

8

15 U.S.C. § 1681i(a) ............................................................................................. 4, 8, 13

9

15 U.S.C. § 1681n ......................................................................................................... 16

10

15 U.S.C. § 1681o ......................................................................................................... 16

11

15 U.S.C. § 1681s ......................................................................................................... 16

12

15 U.S.C. § 1681s-2(a)(1) ............................................................................................. 4

13

15 U.S.C. § 1681s-2(a)(2) ............................................................................................. 4

15 U.S.C. § 1681s-2(a)(8) ............................................................................................. 4

14

15 U.S.C. § 1681t(a) .................................................................................................... 16

15

15 U.S.C. §§ 1681-1681x ............................................................................................... 3

16

Cal. Bus. & Prof. Code § 17200 ................................................................................... 6

17

Cal. Bus. & Prof. Code § 17204 ................................................................................. 16

18

CARES Act, Pub. L. 116–136, § 3513(a) ................................................................. 4, 8

19

CARES Act, Pub. L. 116–136, § 3513(c) ..................................................................... 8

20

CARES Act, Pub. L. 116–136, § 3513(d) ............................................................. 1, 5, 8

21

CARES Act, Pub. L. 116–136, § 4021 (codified at 15 U.S.C. § 1681s-2(F) ......... 5, 8

22

**RULES**

23

Fed. R. Civ. P. 9(b) ................................................................................................ 13, 14

24

25

26

27

28

1      <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2      **INTRODUCTION**

3      TransUnion is not a proper defendant in this case.  The lone claim against it, asserted by a

4 single plaintiff under California's Unfair Competition Law ("UCL"), is not based on any conduct

5 by TransUnion.  Rather, plaintiff alleges that TransUnion did not require another defendant

6 (VantageScore Solutions LLC) to anticipate that yet another defendant (Great Lakes) would

7 allegedly violate its own federal credit reporting obligations.  The UCL does not permit liability

8 on such an attenuated theory, even more so because TransUnion acted as expressly contemplated

9 under federal law in its role as a consumer reporting agency ("CRA").

10      The backdrop to plaintiff Cody Hounanian's UCL claim against TransUnion is the

11 Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116–136 (the "CARES Act"), under

12 which the Secretary of Education is to suspend payments due on some—but not all—federal

13 student loans during the COVID-19 pandemic.  The CARES Act also requires servicers of any

14 loan eligible for relief to "report[] information about the loan to a consumer reporting agency" as

15 if any suspended payment "were a regularly scheduled payment made by a borrower."  CARES

16 Act § 3513(d).  The CARES Act imposes these obligations solely on the Secretary and furnishers

17 (*i.e.*, lenders and account servicers who report credit data to CRAs like TransUnion).  The

18 CARES Act adopts this structure because it is servicers that directly maintain loans and are

19 therefore uniquely positioned to determine whether any special CARES Act reporting

20 requirements apply to a given loan.  The CARES Act does not impose any obligations on CRAs

21 like TransUnion, nor does it in any way alter CRAs' existing obligations under the Fair Credit

22 Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), or otherwise restrict or govern in any way

23 how credit scores are to be calculated.

24      Mr. Hounanian does not allege that TransUnion violated any credit-reporting obligation

25 under the CARES Act, the FCRA, or otherwise.  Rather, his sole claim against TransUnion is that

26 TransUnion violated the UCL by failing to cause a different defendant, VantageScore, to change

27 its general credit-scoring algorithm to prevent any impact on his VantageScore credit score from

28 allegedly erroneous credit reporting by yet another defendant, his student loan servicer Great

Lakes.  Mr. Hounanian asserts that Great Lakes failed to report his student loan debt as current rather than deferred, allegedly resulting in a decrease in his VantageScore score.  Mr. Hounanian does not even allege that TransUnion reported his debt as deferred based on Great Lakes's alleged error.  (Mr. Hounanian and his co-plaintiff, Katherine Sass, assert such claims against others but not against TransUnion).  Mr. Hounanian has not alleged any actionable conduct whatsoever by TransUnion, which had no legal obligation under the CARES Act, the FCRA, or otherwise to cause VantageScore to change its algorithm; nor does he allege facts to establish that TransUnion otherwise had the unbridled control of VantageScore, let alone of Great Lakes, that would be required under the UCL to hold TransUnion liable.  TransUnion's part ownership of VantageScore is itself wholly inadequate, as a matter of law, to create liability.  His claim against TransUnion must be dismissed for multiple independent reasons.

*First*, TransUnion's alleged failure to require VantageScore to adjust its own credit-scoring model was not an "unfair" business practice under the UCL.  The CARES Act, like the FCRA, was carefully calibrated to assign different responsibilities to different entities, imposing specific reporting obligations upon credit furnishers—not the CRAs—with respect to how they are to report the deferred debt to the CRAs.  The CARES Act does not change any obligations of CRAs like TransUnion, which must be able to rely on and report data as they receive it from furnishers subject to the procedural safeguards that the FCRA establishes.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("[C]redit reporting agencies . . . simply collect and report information furnished by others."); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 758-59 (9th Cir. 2018) (finding that a CRA need not change its reporting algorithm to account for alleged technical failures by their subscribers).  The Complaint does not allege that TransUnion ever failed to comply with those safeguards.  Therefore there is nothing unfair about TransUnion's having acted just as the FCRA contemplated a CRA would do.  *See infra*, Section I.A.

*Second*, Mr. Hounanian does not sufficiently plead that TransUnion's alleged failure to adjust the VantageScore credit-scoring model was a "fraudulent" business practice.  He does not allege that TransUnion ever made an inaccurate or misleading representation, let alone that

anyone relied on one.  The alleged misrepresentation here—an allegedly erroneous report by furnisher Great Lakes—is not by TransUnion.  *See infra*, Section I.B.

*Third*, Mr. Hounanian lacks standing to maintain his claim under both Article III and the UCL.  The sole relief he seeks from TransUnion that is available under the UCL is injunctive relief.  Compl. ¶ 138.  But Mr. Hounanian does not allege that any purported harm he suffered as a result of his allegedly decreased VantageScore score is ongoing or likely to recur.  Mr. Hounanian alleges that the only month in which Great Lakes purportedly misreported his debt was April 2020, and that it retroactively amended its reporting.  He does not allege that Great Lakes is likely to misreport the status of his debt in the future.  Thus, Mr. Hounanian lacks standing under Article III.  *See infra*, Section II.A.  Mr. Hounanian also lacks statutory standing under the UCL because the money or property he alleges to have lost—money he paid for a storage unit because he abandoned his search for a new home to purchase and thus elected to reside elsewhere—did not result from any alleged conduct by TransUnion.  *See infra*, Section II.B.

*Finally*, Mr. Hounanian's claim is preempted by the FCRA.  The FCRA vests exclusive power to obtain injunctive relief in designated government agencies.  For this reason, courts have held that the FCRA preempts UCL claims for injunctive relief.  *See infra*, Section III.

Mr. Hounanian has not alleged any actionable conduct by TransUnion or injury suffered as a result of anything TransUnion did.  His claim against TransUnion should be dismissed.

<u>**BACKGROUND**</u>

Although Mr. Hounanian asserts only a single claim under the UCL against TransUnion, he tethers his claim to the policy rationales behind the CARES Act, which amended certain obligations on credit furnishers under the FCRA.

**A.      The Fair Credit Reporting Act**

The business of credit reporting is generally governed by the FCRA.  15 U.S.C. §§ 1681-1681x.  The FCRA governs the conduct of CRAs, such as TransUnion, which prepare consumer reports, as well as credit data furnishers, such as lenders and loan servicers like Great Lakes that report information about consumers' payment history to CRAs.  The FCRA imposes separate

responsibilities on both CRAs and furnishers to help ensure the accuracy of consumer credit information. For example, furnishers may not report to a CRA information that they know or have reasonable cause to believe is inaccurate, *id.* § 1681s-2(a)(1), and they must reinvestigate information disputed by the consumer, *id.* § 1681s-2(a)(8), with a duty to notify the CRA if they determine that any reported information is incomplete or inaccurate, *id.* § 1681s-2(a)(2). Separately, in creating a consumer report, CRAs must "follow reasonable procedures to assure" its accuracy. *Id.* § 1681e(b). The FCRA also specifies a mechanism for a CRA to investigate purported inaccuracies in furnishers' reporting. If a consumer disputes information in his consumer report, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id.* § 1681i(a).

TransUnion is a CRA. It compiles data that it receives from furnishers; follows reasonable procedures to ensure the accuracy of information reported by furnishers; and provides consumer reports both to consumers themselves and to third parties permitted to obtain a consumer's report. *See generally id.* § 1681e. TransUnion is also a partial owner of VantageScore. Compl. ¶¶ 22, 58.

Mr. Hounanian does not allege that TransUnion failed to comply with any of its obligations under the FCRA. Nor does Mr. Hounanian allege that TransUnion failed to comply with any analogous provisions of California law. He does not allege that there was anything inaccurate in any TransUnion consumer report about him.

**B.      The CARES Act**

On March 27, 2020, the CARES Act became law, providing temporary relief to certain individuals and businesses affected by the COVID-19 pandemic. Section 3513 of the CARES Act provides relief to federal student loan borrowers who have certain student loans held by the Department of Education. Under section 3513(a), the Secretary of Education must "suspend all payments due" on such loans "through September 30, 2020." Private loans, Federal Family Education Loan Program loans owned by commercial lenders (yet guaranteed by the federal government), and college-owned Perkins loans are ineligible for suspension under section 3513. Moreover, section 3513 only suspends "payments due." So if the borrower has no payment due,

1    due to a deferral predating the suspension period (for example, an in-school deferment for full-

2    time students), no suspension applies under the CARES Act.  Further, during the suspension

3    period, "the Secretary shall ensure that, for the purpose of reporting information about the loan to

4    a consumer reporting agency, any payment that has been suspended is treated as if it were a

5    regularly scheduled payment made by a borrower."  CARES Act § 3513(d).  Additionally, on a

6    voluntary basis, lenders may grant relief to student loan borrowers affected by the COVID-19

7    pandemic but whose loans are ineligible for suspension under Section 3513.

8         Section 4021 of the CARES Act governs how furnishers must report the status of loans

9    granted accommodations under the CARES Act.  Section 4021 amended the FCRA to provide

10   that furnishers—such as servicers of the Department of Education-owned loans under Section

11   3513—that grant pandemic-affected borrowers an accommodation that delays or otherwise

12   adjusts the borrowers' repayment terms must "report the credit obligation or account as current,"

13   unless "the credit obligation or account was delinquent before the accommodation" or if the credit

14   obligation or account has been charged-off.  *Id.* § 4021 (codified at 15 U.S.C. § 1681s-2(F)).

15        The CARES Act changed nothing with respect to CRAs' obligations under the FCRA or

16   otherwise.  *See id.*; *see also* Declaration of Danielle N. Oakley ("Oakley Decl."), Exhibit ("Ex.")

17   A, Consumer Financial Protection Bureau, FCRA Policy Statement in Light of CARES Act

18   (Apr. 1, 2020) ("The Bureau is . . . issuing this policy statement . . . to highlight furnishers'

19   responsibilities under the CARES Act . . . .  The Bureau expects furnishers to comply with the

20   CARES Act . . . .").  The CARES Act creates a framework that places additional obligations on

21   furnishers—that is, on the creditors and servicers who have the "direct relationship with the

22   consumer" and are therefore best positioned to determine whether any CARES Act reporting

23   requirements apply to a given loan.  *Carvalho*, 629 F.3d at 892.  Furnishers are expected to

24   understand and apply those obligations.  Consistent with the long-standing structure and purpose

25   of the FCRA and analogous state laws, CRAs were to continue to report data as they receive it

26   from furnishers and must maintain procedures for investigating disputes regarding any alleged

27   inaccuracy in furnishers' reporting.  *See id.* at 891 ("[C]redit reporting agencies . . . simply collect

28   and report information furnished by others."); *Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638,

641 (W.D. Va. 2000) ("Congress . . . struck a balance between the rights of citizens to be reported about accurately and the need for efficiency among credit reporting agencies.  The balance they struck places a comparatively light burden on reporting agencies regarding the accuracy of information they gather.").  Likewise, the CARES Act does not dictate how credit scores are to be calculated or impose any restrictions whatsoever on how credit scores may or may not be impacted by accommodations lenders may make.

### C.  Mr. Hounanian's Claim Against TransUnion

Mr. Hounanian alleges that his federal student loan was subject to repayment suspension under section 3513 of the CARES Act.  He contends that Great Lakes initially misreported the loan's status as "deferred" to the CRAs but thereafter corrected the reporting.  Compl. ¶¶ 46, 111.  He then alleges that the VantageScore 3.0 credit-scoring model interpreted Great Lakes's deferred notation as a negative event.  *Id.* ¶¶ 62, 76.  He alleges that TransUnion should have "anticipate[d]" that furnishers like Great Lakes would inaccurately report student loan information, and thus preemptively have caused VantageScore to have "adjusted" its entire credit-scoring model "to not punish borrowers whose loans are inaccurately reported."  *Id.* ¶¶ 66, 94, 102.  This alleged activity, which he contends constitutes an unfair or fraudulent business practice under the UCL, comprises Mr. Hounanian's sole allegation against TransUnion.  Mr. Hounanian purports to bring his claim on behalf of all California residents about whom Great Lakes furnished information to TransUnion in April 2020.  *Id.* ¶ 103.

### ARGUMENT

### I.  MR. HOUNANIAN HAS NOT ALLEGED THAT TRANSUNION VIOLATED THE UCL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To survive dismissal, a plaintiff's allegations must be more than conclusory, speculative, or implausible, *Wright v. Gen. Mills, Inc.*, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009), and cannot merely allege "the mere possibility of misconduct," *Shaker v. Nature's Path Foods, Inc.*, 2013 WL 6729802, at *3 (C.D. Cal. Dec. 16, 2013).  In this case, Mr. Hounanian alleges only that TransUnion engaged in an unfair or fraudulent business practice;

1   he does not allege that TransUnion engaged in any unlawful practice.  His allegations fall far

2   short under governing law.

3       **A.     Mr. Hounanian Has Not Alleged That Transunion Engaged In Any Unfair
             Business Practice.**

4

5       Although the UCL does not define the term "unfair," and courts have applied several tests,

6   Mr. Hounanian's allegations fail under any standard.  A traditional test was that conduct is

7   "unfair" if it "offends an established public policy or . . . is immoral, unethical, oppressive,

8   unscrupulous or substantially injurious to consumers."  *E.g.*, *Hodsdon v. Mars, Inc.*, 891 F.3d

9   857, 866 (9th Cir. 2018).  The more modern test requires that the conduct also "significantly

10  threaten[] or harm[] competition" and be "tethered to some legislatively declared policy or proof

11  of some actual or threatened impact on competition."  *Id.*  And a plaintiff must do more than

12  simply assert that the defendant's conduct conflicts with a statute's "general policy."  *Id.* at 867

13  (dismissing UCL claim where the defendant's failure to label food products could indirectly

14  exacerbate slave labor but would not do so directly).  Rather, the plaintiff must show a "a close

15  nexus" between the defendant's conduct and the policy, such that the conduct "violate[s] the

16  policy or spirit of [the] law[] because its effects are comparable to or the same as a violation of

17  the law."  *Id.* at 866.

18      Mr. Hounanian contends that TransUnion's failure to require VantageScore to adjust its

19  credit-scoring model is unfair under the UCL because it "contravenes the public policy behind the

20  CARES Act."  Compl. ¶ 102; *see also id.* ¶ 133.  The only support Mr. Hounanian offers is the

21  generic assertion that the CARES Act was intended to help certain student borrowers by

22  forbearing their loans without adverse impact to their credit.  *Id.* ¶¶ 3, 5.  This general policy is

23  not sufficient to establish liability for TransUnion, however.

24      TransUnion's alleged conduct—an alleged failure to cause VantageScore to adjust its

25  credit-scoring model—is not analogous or comparable to a violation of the CARES Act by

26  TransUnion.  As an initial matter, the CARES Act itself imposes no obligations on TransUnion

27  and other CRAs.  Under the express terms of the Act, the Secretary of Education (and its loan

28  servicers) alone are responsible for accurately reporting loan statuses to the CRAs, and it was

expected that they would do so.  CARES Act § 3513(d) ("*[T]he Secretary* shall ensure that . . . any payment that has been suspended is treated as if it were a regularly scheduled payment made by a borrower.") (emphasis added); *see also id.* § 3513(a) ("*The Secretary* shall suspend all payments due for loans . . . .") (emphasis added); *id.* § 3513(c) ("*[T]he Secretary* shall deem each month for which a loan payment was suspended under this section as if the borrower of the loan had made a payment . . . .") (emphasis added); *id.* § 4021 ("[I]f *a furnisher* makes an accommodation . . . , *the furnisher* shall . . . report . . . .") (emphasis added).  The Consumer Financial Protection Bureau has issued guidance to furnishers stressing the furnishers' responsibilities to comply with the CARES Act and report consumer information accurately.  *See* Oakley Decl., Ex. A, Consumer Financial Protection Bureau, FCRA Policy Statement in Light of CARES Act (Apr. 1, 2020).  In light of the framework Congress created for the CARES Act, the CRAs should not have fairly expected to be responsible for adjusting credit-scoring algorithms to override a furnisher's allegedly erroneous reports.

Nor did the CARES Act amend the provisions of the FCRA that govern how a CRA must respond to potentially erroneous reporting—namely, the investigation and reinvestigation procedures CRAs must employ in the event consumers contend there are errors in their consumer reports.  *See* 15 U.S.C. § 1681i(a).  And Mr. Hounanian does not allege that TransUnion failed to comply with either of those FCRA requirements (or their California analogs).  Indeed, the Ninth Circuit has held that beyond these requirements, CRAs are entitled to rely on information received from furnishers.  *See Carvalho*, 629 F.3d at 891-92 ("[C]redit reporting agencies . . . simply collect and report information furnished by others. . . .  'With respect to the accuracy of [a consumer's credit] information, the CRA is a third party, lacking any direct relationship with the consumer**,** and its responsibility is to "*re* investigate" a matter once already investigated in the first place.' . . . [T]he creditor or furnisher . . . stands in a far better position to" investigate the legal status of a consumer's debt) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156-57 (9th Cir. 2009)); *Shaw*, 891 F.3d at 758-59 ("Appellants cite no case law suggesting that Experian must amend its reporting system when a subscriber disregards its technical manuals in order to avoid liability."); *Davis v. Carrington Mortg. Servs., LLC*, --- F. Supp. 3d ---, 2020 WL

1853317, at *5 (D. Nev. Apr. 10, 2020) (granting CRA-defendant's motion to dismiss finding

that "CRAs are neither qualified nor obligated to determine the legal status of a plaintiff's debt").

Nor does the FCRA require CRAs (be it TransUnion or VantageScore) to amend their credit-

reporting procedures for thousands of furnishers simply to address the potential that—as Mr.

Hounanian alleges here—a single furnisher will make alleged misreporting. *Shaw*, 891 F.3d at

759 ("Nor should Experian necessarily be required to amend its coding to curb a single

subscriber's misconduct when all 14,999 other subscribers are apparently accurately reading its

manuals."). This is confirmed by the furnisher-focused framework that the CARES Act

establishes. *See also Hodsdon*, 891 F.3d at 867 (holding that a defendant's "failure to disclose

information it had no duty to disclose in the first place is not substantially injurious, immoral, or

unethical").

It is well-settled that liability cannot be premised on alleged unfairness under the UCL if

the defendant acted consistently with the governing statutory scheme. *Hodsdon* is instructive.

There, the plaintiffs argued that manufacturers' failure to disclose certain labor practices on their

products violated the unfair prong of the UCL because of public policy against those labor

practices. The Ninth Circuit affirmed dismissal, holding that "requiring [the defendant] to place

labels on its products could arguably impinge on the Supply Chains Act, which addresses

disclosure of labor abuses, but does not require labels on the products themselves." 891 F.3d at

867; *see also, e.g.*, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999)

("Acts that the Legislature has determined to be lawful may not form the basis for an action under

the unfair competition law."); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 856 (2002)

(affirming dismissal on pleadings and explaining that when determining under the UCL whether a

defendant's conduct offends a statutory policy, courts may look to other statutes that balance

conflicting interests).

Here, too, the CARES Act establishes a framework that amends reporting obligations

solely for furnishers and does not alter CRAs' obligations under the FCRA. The relief

Mr. Hounanian seeks under the UCL here would upset the balance of responsibilities reflected in

these statutes. For this reason, no factual allegations in the Complaint even suggest TransUnion's

1    conduct would offend the policy of the CARES Act (or the FCRA)—or that it otherwise engaged

2    in unethical, immoral, unscrupulous, or oppressive conduct—by failing to compel another

3    company (VantageScore) to adjust that other company's credit-scoring model to account for yet

4    another company's (Great Lakes's) alleged misreporting. *Cf. Carvalho*, 629 F.3d at 892

5    (customer who disputes the characterization "of an obligation should do so directly at the

6    furnisher level").

7        It does not matter that the Complaint perfunctorily alleges that TransUnion had a minority

8    ownership interest in a company whose credit-scoring model Mr. Hounanian dislikes. Compl.

9    ¶¶ 22, 58. The Complaint has failed to allege that VantageScore itself violated the UCL, as

10   addressed in VantageScore's own Motion to Dismiss. But even more significantly as to

11   TransUnion, TransUnion cannot be vicariously liable for any theoretical UCL violation that

12   VantageScore may have committed. *See Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952,

13   960 (2002) ("The concept of vicarious liability has no application to actions brought under the

14   [UCL].") (citation omitted); *accord Galope v. Deutsche Bank Nat'l Tr. Co.*, 666 F. App'x 671,

15   674 (9th Cir. 2016) ("Claims under California's UCL…cannot be predicated on vicarious

16   liability."); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007); *Beasley v.*

17   *Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 961 (N.D. Cal. 2019).

18       And the Complaint offers no plausible factual allegations that TransUnion exercised the

19   unbridled control of the VantageScore credit-scoring algorithm required to establish TransUnion

20   somehow can be liable based on personal participation in the alleged wrongful conduct. *See, e.g.*,

21   *Emery*, 95 Cal. App. 4th at 960 ("A defendant's liability [under the UCL] must be based on his

22   personal participation in the unlawful practices and 'unbridled control' over the practices that are

23   found to violate sections 17200 or 17500."); *People v. Sarpas*, 225 Cal. App. 4th 1539, 1563

24   (2014) (corporation's individual owners could be liable for corporation's UCL violation where

25   corporation and owners "acted as a single enterprise"). The Complaint vaguely asserts the

26   conclusion that Experian, TransUnion, and Equifax "operate and control" and "implement" the

27   credit-scoring model, but it bases those assertions on allegations that they "share consumer credit

28   information" and "abide by agreed upon policies." Compl. ¶¶ 53, 55-57. That falls far short of

1   alleging facts to establish that TransUnion had the "unbridled" ability (let alone obligation) to

2   require VantageScore to implement changes to the model. Absent such allegations, TransUnion

3   cannot face liability under the UCL. Indeed, the Complaint recognizes that VantageScore, not

4   TransUnion, took action to "ameliorate the perverse impact of its conduct" by adjusting "its

5   algorithm." *Id.* ¶ 94.

6          Nor does the Complaint even request that this Court disregard VantageScore's corporate

7   form to hold TransUnion liable by piercing the corporate veil. To pierce the corporate veil

8   between a parent and subsidiary under the alter ego theory—let alone between a company and its

9   minority owner, as here—a plaintiff must show "(1) that there is such a unity of interest and

10  ownership between the parent and subsidiary that the separate personalities of the entities no

11  longer exists; and (2) failure to disregard the corporate forms would result in fraud or injustice."

12  *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1121 (S.D. Cal. 2011)

13  (applying California and Delaware law).[1] No factual allegation in the Complaint comes close to

14  meeting that standard, nor could it. *See, e.g.*, *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650

15  F.3d 1139, 1150-51 (8th Cir. 2011) (finding no evidence that VantageScore is an alter ego of its

16  parent CRAs). Alter ego liability is therefore unavailable here.

17         The law above is sufficient to dispose of the unfairness claim. And it is also good policy.

18  Preemptively adjusting the VantageScore credit-scoring model would be not workable as a

19  practical matter, and indeed, such adjustment could cause more harm than good.

20  Mr. Hounanian's contention fails to consider that there are reasons why a student loan might

21  *properly* be reported as deferred, even under the CARES Act. Section 3513 of the CARES Act

22  only applies to certain types of federally owned student loans. Nor would section 3513 apply to

23  otherwise-eligible loans that already were in deferment before the applicable CARES Act period

24  and for which no payment was due during the suspension period. *See, e.g.*, Oakley Decl., Ex. B,

25  _____

26  [1] California courts have held that to determine whether to pierce the corporate veil, courts should
    look to the sought-to-be-pierced entity's state of incorporation for the rule of decision. *See*
    *Leitner v. Sadhana Temple of N.Y., Inc.*, 2014 WL 12588643, at *15 (C.D. Cal. Oct. 17, 2014)

27  (citing cases). VantageScore is registered in Delaware. Regardless, California's and Delaware's
    requirements for establishing alter ego liability are largely the same, and courts have applied them

28  interchangeably. *E.g.*, *In re Hydroxycut*, 810 F. Supp. 2d at 1121 n.10.

TRANSUNION'S MOTION TO DISMISS
20-CV-3424-EMC

U.S. Dep't of Educ., Office of Postsecondary Educ., *UPDATED Guidance for interruptions of study related to Coronavirus (COVID-19)* (Apr. 3, 2020)[2] ("The Department will continue to report to the National Student Loan Data System (NSLDS) as 'in-school' [deferment status under 34 C.F.R. § 685.204] for the loan status of each borrower who was in an 'in-school' status on the date the borrower's attendance at the institution was interrupted due to the COVID-19 national emergency.  The Department will continue the borrower in that loan status until the institution reports the borrower as withdrawn.").  And many servicers of federal loans service both CARES-eligible and CARES-ineligible loans.

Mr. Hounanian does not and could not allege that TransUnion knows, when it receives loan information from furnishers, which accounts are eligible for suspension, which accounts are federal or private, or which accounts were misreported as deferred.  Rather, the furnishers are responsible for determining the applicability of the CARES Act's suspension provisions on the loans they service, both as a legal (under both the CARES Act and the FCRA) and practical matter.  *See Carvalho*, 629 F.3d at 891-92 (a "creditor or furnisher . . . stands in a far better position to" investigate the legal status of a consumer's debt).  And if TransUnion were to make an error and improperly report a consumer's loan as current when it should have been reported as deferred, then TransUnion would be improperly distorting properly furnished data.

Mr. Hounanian asserts that TransUnion could have preemptively resolved VantageScore's alleged treatment of Great Lakes's alleged misreporting issues, Compl. ¶¶ 81-82, but he does not allege what any of these methods could have been, let alone how they would have complied with a CRA's obligations under the FCRA.  This failure is independently fatal to his claim.  *See Finley v. TransUnion*, 2020 WL 408987, at *3 (N.D. Cal. Jan. 24, 2020) (granting CRA-defendants' motion to dismiss where plaintiff alleged defendants should have engaged in additional procedures but was unspecific as to "what more they should have done"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (conclusory allegations insufficient to state a claim); *Carvalho*, 629 F.3d at 891-93 (rejecting plaintiff's claim that CRAs needed to adopt more robust

---

[2] https://ifap.ed.gov/electronic-announcements/040320UPDATEDGuidanceInterruptStudyRelCOVID19.

1    investigation inquiry into a consumer's disputed debt).

2         The FCRA already has established consumer-protecting procedures for reporting and

3    correcting reporting errors.  *E.g.*, 15 U.S.C. § 1681i(a) (reinvestigation procedures).

4    Mr. Hounanian's claim that TransUnion acted unfairly by adhering to established FCRA

5    procedures, rather than somehow establishing new mechanisms to prevent another company from

6    relying on undisputed data provided by yet another company, should be rejected as a matter of

7    law.

8         **B.    Mr. Hounanian Has Not Alleged Any Fraudulent Conduct By TransUnion.**

9         The Complaint also fails to state a claim under the UCL's fraudulent prong because it

10   identifies no false or misleading statement by TransUnion at all.  To state a claim of fraudulent

11   business practices under the UCL, Mr. Hounanian must allege with specificity that TransUnion

12   (1) made a misrepresentation (or, in some cases, an omission), (2) that was material, (3) that was

13   relied upon by Mr. Hounanian, and (4) that was likely to deceive members of the public.

14   *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010).  These allegations are subject

15   to the strictures of Federal Rule of Civil Procedure 9(b), *Kearns v. Ford Motor Co.*, 567 F.3d

16   1120, 1125 (9th Cir. 2009), which requires that Mr. Hounanian "state the time, place, and specific

17   content of the false representations," *Chulick-Perez v. Carmax Auto Superstores Cal., LLC*, 2014

18   WL 2154479, at *7 (E.D. Cal. May 22, 2014).  Mr. Hounanian has not pleaded anything of the

19   sort.

20        The Complaint makes only a single allegation in support of its claim that TransUnion

21   engaged in a fraudulent business practice, and it is not even specific as to any statement or

22   omission by TransUnion.  It alleges only: "Defendants['] . . . practices were also fraudulent

23   because consumers and report recipients were deceived and/or were likely to be deceived by

24   Defendants' inaccurate representations with respect to Mr. Hounanian and the California Subclass

25   Members' creditworthiness."  Compl. ¶ 135.  This amalgamated assertion is unsupported and

26   insufficient to sustain a fraudulent practices claim under the UCL.

27        As an initial matter, Mr. Hounanian's claim is improperly pled because the Complaint

28   "lump[s] all of the [CRAs] together throughout the entire [Complaint]."  *Abed-Stephens v. First*

1  *Fed. Bank of Cal.*, 2010 WL 1266833, at *2 (C.D. Cal. Mar. 30, 2010).  Mr. Hounanian's

2  allegations of fraudulent business practice are inadequate because they were "made not as to

3  [TransUnion] individually, but as to all three of the [CRAs] as a group."  *Meza v. Experian Info.*

4  *Sols., Inc.*, 2019 WL 6840390, at *6 (E.D. Cal. Dec. 16, 2019).  As in *Meza*, Mr. Hounanian's

5  "wholesale failure to meaningfully differentiate among the Defendants" requires dismissal,

6  especially in light of Rule 9(b)'s heightened pleading standard.

7      Moreover, Mr. Hounanian has not pleaded even bare facts that would support a fraudulent

8  business practices claim against TransUnion.  Mr. Hounanian has not pleaded that TransUnion

9  made any misrepresentation whatsoever, and he certainly has not pleaded the time, place, and

10  specific content of such misrepresentation.  *See Kearns*, 567 F.3d at 1126 (dismissal was proper

11  because the plaintiff had failed to allege the particular circumstances surrounding the alleged

12  misrepresentations, including "what [they] specifically stated," "when he was exposed to them,"

13  or "which [ones] he relied upon in making his decision").  The only inaccurate representation

14  Mr. Hounanian alleges was issued by his student-loan servicer, Great Lakes; TransUnion is just

15  alleged to have failed to ensure that another defendant, VantageScore, adjusted its scoring to

16  correct that misrepresentation.  *See* Compl. ¶ 111.  Mr. Hounanian alleges no inaccuracy in the

17  credit reporting by TransUnion.  Insofar as Mr. Hounanian alleges this inaction constitutes a

18  fraudulent omission, such an allegation would not be actionable under the UCL.  *Hodsdon*, 891

19  F.3d at 865 ("A failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to

20  deceive' anyone within the meaning of the UCL.") (internal quotation marks omitted).  And, as

21  explained above, the Complaint does not plead facts sufficient to hold TransUnion liable for any

22  UCL violations others may have committed.  *Emery*, 95 Cal. App. 4th at 960.

23      Mr. Hounanian similarly does not claim that he relied on any TransUnion misstatement, as

24  also would be required to state a UCL claim.  *See In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).

25  There is similarly no allegation that the VantageScore credit-scoring model did or would have

26  deceived anyone into taking any action; the credit-scoring model is simply used to create a credit

27  score based on inputting information received from furnishers.  Given Mr. Hounanian's failure to

28  sufficiently plead these elements, his claim of fraudulent business practices should be dismissed.

1

## II.     MR. HOUNANIAN LACKS STANDING TO PURSUE HIS CLAIM AGAINST TRANSUNION.

2

3

### A.     Mr. Hounanian Lacks Article III Standing To Seek Injunctive Relief Because His Alleged Harm Is Not Likely To Recur.

4        Mr. Hounanian lacks standing under Article III because he alleges no injury redressable

5   by TransUnion in this lawsuit.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149

6   (2010) ("Standing under Article III of the Constitution requires that an injury be concrete,

7   particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

8   by a favorable ruling.").  The only remedy Mr. Hounanian seeks that is recoverable under the

9   UCL is injunctive relief.  Compl. ¶ 138.  While Hounanian's prayer for relief also refers to

10  "actual statutory, and punitive damages as provided by the FCRA, CCRAA [California Consumer

11  Credit Reporting Agencies' Act] and UCL," damages are not available under the UCL.  *Korea*

12  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  Mr. Hounanian also seeks

13  attorney's fees and costs, but this relief cannot form the basis of a UCL claim, *see Bullwinkle v.*

14  *U.S. Bank, Nat'l Ass'n*, 2013 WL 5718451, at *2 (N.D. Cal. Oct. 21, 2013), and attorney's fees

15  are not available under the UCL, *see Shadoan v. World Sav. & Loan Ass'n*, 219 Cal. App. 3d 97,

16  108 n.7 (1990).  Because Mr. Hounanian seeks only injunctive relief, he lacks Article III standing

17  to pursue his claims unless he demonstrates that his claimed harm is likely to recur.  *Peacock v.*

18  *21st Am. Brewery Cafe, LLC*, 2018 WL 452153, at *9 (N.D. Cal. Jan. 17, 2018) ("Injunctive

19  relief is not available without a showing of an actualized, imminent threat that the same harm will

20  be suffered again.").  He cannot do so.

21        Mr. Hounanian tries to show a threat of future harm by alleging that he "will seek credit in

22  the future," and that "because of the ubiquity of Defendants' reports in credit screening," there is

23  "a real and immediate threat Plaintiff Hounanian will suffer the same injury with respect to future

24  credit applications."  Compl. ¶ 137.  But the Complaint does not suggest that Great Lakes's

25  purported misreporting of Mr. Hounanian's student loan account during the COVID-19 pandemic

26  was anything other than a one-time mistake; he acknowledges that Great Lakes agreed to fix the

27  reporting problem by the following month (*i.e.*, May 2020).  *Id.* ¶ 85.  And nowhere does

28  Mr. Hounanian allege that anytime in the future Great Lakes will incorrectly report the payment

status of his student loan.  Nor does he allege that the older April report would be used in the future.  Absent such allegations, Mr. Hounanian cannot demonstrate that the failure to modify VantageScore's credit-scoring model would cause him any harm.  His claim for injunctive relief cannot satisfy the Article III standing requirement.

**B.    Mr. Hounanian Lacks Statutory Standing Under the UCL Because He Does Not Allege To Have Lost Money Or Property As A Result Of Any Conduct By TransUnion.**

An individual has standing to assert a UCL claim only if he or she "has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  The second prong of this standing test imposes a causation requirement.  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).  In this case, Mr. Hounanian cannot show causation because he has not plausibly alleged that TransUnion caused his alleged loss of money or property—*i.e.*, his expenditure of funds result from obtaining interim storage accommodations while he delays shopping for another home because he allegedly lost a credit opportunity.  At most, Mr. Hounanian has alleged only that entities other than TransUnion caused his purported loss—Great Lakes, which reported his loan status, and VantageScore, which did not change its scoring model.  Because, as explained above (*supra*, Section I.A), the Complaint has not plausibly alleged that TransUnion controls Vantage's credit-scoring model—let alone Great Lakes's reporting—Mr. Hounanian cannot claim that TransUnion's failure to adjust that model resulted in Mr. Hounanian's alleged harm.  As a result, Mr. Hounanian has not alleged that he lost any money or property as a result of any conduct by TransUnion.

**III.    MR. HOUNANIAN'S CLAIM IS PREEMPTED BY THE FCRA.**

Section 1681t(a) of the FCRA expressly preempts any state laws that "are inconsistent with any provision of [FCRA]."  15 U.S.C. § 1681t(a).  Because the FCRA vests exclusive power to obtain injunctive relief solely in designated government agencies, *compare id.* § 1681s (identifying agencies vested with enforcement authority), *with id.* §§ 1681n & 1681o (providing private right of action for violations, but not identifying injunctive relief as a permitted remedy),

1  courts routinely conclude that the FCRA preempts consumer claims for injunctive relief.  *See,*

2  *e.g., Gauci v. Citi Mortg.*, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011).  Although not

3  universal, several courts have held that this is so even where, as here, a plaintiff demands

4  injunctive relief under the UCL rather than the FCRA.  *See, e.g., Quadrant Info. Servs., LLC v.*

5  *LexisNexis Risk Sols., Inc.*, 2012 WL 3155559, at *3 (N.D. Cal. Aug. 2, 2012) ("[T]his Court has

6  uniformly concluded that a UCL claim for injunctive relief is preempted by the FCRA."); *Roe v.*

7  *LexisNexis Risk. Sols. Inc*., 2013 WL 11246904, at *7 (C.D. Cal. Mar. 19, 2013) (same).  *But see,*

8  *e.g., Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947-48 (N.D. Cal. 2012); *cf. El-Aheidab*

9  *v. Citibank*, 2012 WL 506473, at *6 (N.D. Cal. Feb. 15, 2012) (Chen, J.).  For this reason, Mr.

10  Hounanian's claim against TransUnion is preempted.

### CONCLUSION

12       TransUnion requests that the Court dismiss Mr. Hounanian's Complaint with regard to

13  TransUnion in its entirety.

15  Dated: July 17, 2020

                                      O'MELVENY & MYERS LLP

                                      /s/ *Danielle N. Oakley*

                                      Danielle N. Oakley

                                      Attorneys for Defendant
                                      TransUnion LLC